**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

---------------------------------------------------------------x
: Case No. 1:20-cv-05124
ML FASHION, LLC and ML RETAIL, LLC, :
:
Plaintiffs, : **JURY DEMAND**
:
- against - :
:
NOBELLE, STEPHANIE MENKIN, SARIT :
MAMAN NAGRANI, and NICOLAS GOUREAU, :
:
Defendants. :
:
---------------------------------------------------------------x

**PLAINTIFFS ML FASHION, LLC AND ML RETAIL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | STATEMENT OF FACTS | 2 |
| A. | Menkin and Goureau Solicit Investment to Rescue Their Failing Business | 2 |
| B. | ML Retail, Menkin, and Goureau Form ML Fashion | 2 |
| C. | ML Fashion Operates Retail Stores | 4 |
| D. | Menkin and Goureau Loot ML Fashion for Their Personal Purposes for Years and Then File Improper Lawsuits to Attempt to Avoid Liability | 5 |
| E. | DEFENDANTS SEIZE ML FASHION'S INVENTORY AND SELL IT AT THE GREENWICH PROPERTY WITHOUT ML FASHION'S AUTHORIZATION | 6 |
| III. | ARGUMENT | 8 |
| A. | Plaintiffs Are Entitled to Emergency Injunctive Relief | 8 |
| 1. | Plaintiffs Have a Likelihood of Success on the Merits | 9 |
| 2. | Without a TRO, Plaintiffs Will Suffer Irreparable Harm | 13 |
| 3. | Granting Injunctive Relief Will Not Result In Greater Harm To Defendants And Is In The Public Interest | 14 |
| 4. | Only a Nominal Bond Should Be Required. | 15 |
| IV. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,
 971 F.2d 6 (7th Cir. 1992) ....................................................................................................... 8

*Abbott Labs. v. Sando, Inc.*,
 500 F. Supp. 2d 807 (N.D. Ill. 2007) ..................................................................................... 14

*D.U. v. Rhoades*,
 825 F.3d 331 (7th Cir. 2016) ................................................................................................... 8

*Eggert v. Weisz*,
 839 F.2d 1261 (7th Cir. 1988) ................................................................................................. 9

*Fednav Int'l Ltd. v. Cont'l Ins. Co.*,
 624 F.3d 834 (7th Cir. 2010) ................................................................................................. 10

*Foodcomm Int'l v. Barry*,
 328 F.3d 300 (7th Cir. 2003) ................................................................................................... 9

*George A. Fuller Co., Div. of Northrop Corp. v. Chicago College of Osteopathic Medicine*,
 719 F.2d 1326 (7th Cir. 1983) ............................................................................................... 11

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*,
 549 F.3d 1079 (7th Cir. 2008) ............................................................................................... 14

*Gross v. Town of Cicero*,
 619 F.3d 697 (7th Cir. 2010) ................................................................................................... 9

*Kennedy v. Nat'l Juvenile Det. Ass'n*,
 187 F.3d 690 (7th Cir. 1999) ................................................................................................. 12

*Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*,
 2015 U.S. Dist. LEXIS 75916 (N.D. Ill. June 11, 2015) ................................................. 13, 14

*Muzikowski v. Paramount Pictures Corp.*,
 477 F.3d 899 (7th Cir. 2007) ................................................................................................. 12

*nClosures Inc. v. Block & Co.*,
 2013 U.S. Dist. LEXIS 5700 (N.D. Ill. Jan. 15, 2013) .......................................................... 14

*Neuros Co. v. Kturbo, Inc.*,
 2013 U.S. Dist. LEXIS 56095 (N.D. Ill. Apr. 17, 2013) ....................................................... 13

*Newman v. Metro. Life Ins. Co.*,
   885 F.3d 992 (7th Cir. 2018) ..................................................................................10

*Northbound Group, Inc. v. Norvax, Inc.*,
   5 F. Supp. 3d. 956 (N.D. Ill. 2013) ........................................................................10

*Prince v. Zazove*,
   959 F.2d 1395 (7th Cir. 1992) ................................................................................11

*Scanlan v. Eisenberg*,
   2011 U.S. Dist. LEXIS 24681 (N.D. Ill. Mar. 9, 2011) ...........................................12

*Turnell v. Centimark Corp.*,
   796 F.3d 656 (7th Cir. 2015) ..................................................................................13

**Statutes**

Lanham Act ................................................................................................8, 12, 13, 14

## I. PRELIMINARY STATEMENT

Plaintiffs ML Fashion, LLC ("ML Fashion") and ML Retail, LLC ("ML Retail") (collectively, "Plaintiffs") seek to enjoin Defendants Nobelle ("Nobelle"), Stephanie Menkin ("Menkin"), Sarit Maman Nagrani ("Nagrani"), and Nicolas Goureau ("Goureau") (collectively, "Defendants") from continuing to sell property owned by ML Fashion without permission, which property serves as collateral for a loan extended by ML Retail; and from operating a competitive fashion retail business that uses ML Fashion's own confidential information and computers. Plaintiff ML Fashion operates a retail clothing business, while Plaintiff ML Retail is one of three members of ML Fashion and a party to the governing LLC agreement. Defendants Menkin and Goureau are also members and/or officers of Plaintiff ML Fashion. Defendant Nagrani is a former employee of ML Fashion.

In violation of their fiduciary duties, applicable law and/or contractual obligations to Plaintiffs, Defendants have illegally seized computers with confidential information, fixtures, clothing and other inventory owned by ML Fashion; opened up a retail store called Nobelle in direct competition with ML Fashion, at which Defendants have no right to operate; and are selling ML Fashion's inventory at that competing retail store for Defendants' own benefit, all the while jeopardizing the jobs of 33 part-time and full time employees, the continuing viability of ML Fashion and depleting collateral for loans made to ML Fashion by ML Retail allowing it to operate. Worse still, inexplicably Defendants are conducting this scheme and continuing misconduct while Menkin and Goureau themselves brought unsupported claims against ML Retail and ML Fashion in two lawsuits pending in Delaware and New York to divert attention from their own misconduct.

Accordingly, Plaintiffs are entitled to a TRO in the form set forth in the Proposed Order submitted herewith.

## II. STATEMENT OF FACTS

The underlying facts are set forth in greater detail in the Verified Complaint ("Compl.") (Dkt. No. 1). The facts relevant to this motion are set forth below.

### A. Menkin and Goureau Solicit Investment to Rescue Their Failing Business

In or about 2014, Defendants Menkin and Goureau solicited an investment from Marcus Lemonis ("Lemonis"), who resides in Illinois, to rescue their failing fashion retail business, operating under the brand name "Courage.B." (Compl., ¶¶ 15-16). In connection with their solicitation of an investment from Lemonis to rescue their business, in or about 2014, Defendants Meknin and Goureau appeared on Lemonis' popular CNBC television series, "The Profit." (*Id.*, ¶ 17). While appearing on "The Profit," Defendants Menkin and Goureau admitted that their business had been poorly run and had lost more than $500,00 the year before and that they just completed a lawsuit against their step-father involving the business. (*Id.*, ¶ 18).

Lemonis agreed to invest $800,000 in Menkin's and Goureau's failing business in order to allow their business to purchase inventory, pay other fees and for Goureau to receive monies for the first time in exchange for ML Retail, for which Lemonis serves as managing member, receiving an ownership stake in that business. (Compl., ¶ 19). After Lemonis invested in, and became a part owner of, Plaintiff's business, the business acquired new brands and opened new stores. (*Id.*, ¶ 20).

### B. ML Retail, Menkin, and Goureau Form ML Fashion

In or about 2016, Menkin, Goureau, and Plaintiff ML Retail formed ML Fashion to oversee and operate their expanding fashion retail business. (Compl., ¶ 21). On or about March 29, 2016, Menkin, Goureau, and ML Retail entered into a limited liability company agreement for ML Fashion (the "LLC Agreement") (*Id.*, ¶ 24 and Ex. 1 thereto). Menkin and Goureau each signed

2

the LLC Agreement individually. (*Id.* ¶ 25). Lemonis signed the LLC Agreement in Illinois on behalf of ML Retail. (*Id.* ¶ 26).

Exhibit A of the LLC Agreement provides that ML Retail owned a 33.4% membership interest in ML Fashion, and that Menkin and Goureau each owned a 33.3% membership interest in ML Fashion. (Compl., ¶ 27 and Ex. 1 thereto at Ex. A). Exhibit B of the LLC Agreement provides that Lemonis is the chairman and CEO of ML Fashion, and that Menkin serves as ML Fashion's president. (*Id.*, ¶ 28 and Ex. 1 thereto at Ex. B).

Section 2.7 of the LLC Agreement provides that ML Fashion holds title to all of its property, and that no member of ML Fashion has an ownership interest in ML Fashion's property. (Compl., ¶ 29 and Ex. 1 thereto at Section 2.7). Section 6 of the LLC Agreement provides that the management of ML Fashion is "vested entirely and exclusively in" the manager of ML Fashion (the "Manager"). (*Id.*, ¶ 30 and Ex. 1 thereto at Section 6.1(a)). Section 6.1(b) of the LLC Agreement provides that the Manager of ML Fashion is Marcus Lemonis. (*Id.*, ¶ 31 and Ex. 1 thereto at Section 6.1(b)). Section 7.1 of the LLC Agreement provides that ML Fashion's members do not have any right to participate in the management or control of ML Fashion, or to act for or bind ML Fashion in any way. (*Id.*, ¶ 32 and Ex. 1 thereto at Section 7.1).

Section 7.7(b) of the LLC Agreement provides that members of the ML Fashion, during the time that they are members and in the 12 months following the end of their membership in ML Fashion, shall not, *inter alia*, "engage in any business, have any financial interest in any company or entity that engages in any business or make any loans to any company or entity that engages in any business that engages in or competes, directly or indirectly, with" ML Fashion's business. (Compl., ¶ 33 and Ex. 1 thereto at Section 7.7(b)). Section 7.7(d) of the LLC Agreement provides that the members of ML Fashion, including Menkin and Goureau, agree that breaches of Section

3

7.7(b) of the LLC Agreement "would be highly injurious and cause irreparable harm" to ML Fashion, and that ML Fashion is accordingly entitled to seek specific performance or injunctive relief as a result of any such breaches. (*Id.*, ¶ 34 and Ex. 1 thereto at Section 7.7(d)).

### C. ML Fashion Operates Retail Stores

Beginning in or about 2016, ML Fashion operated retail stores across the country, including a "MARCUS" store at 85 Greenwich Avenue, Greenwich, Connecticut (the "Greenwich Property"). (Compl., ¶ 35). In connection with these operations, ML Fashion advertises and sells its products in interstate commerce. (*Id.*, ¶ 22). ML Fashion also employs 33 individuals on a part-time or full-time basis. (*Id.*, ¶ 38).

ML Fashion sold clothing and other fashion-related retail products at the Greenwich Property until in or about 2020, including paying payroll and rent. (Compl., ¶ 36). ML Fashion is the owner of the fixtures, furniture, and equipment ("FFE") in the Greenwich Property. (*Id.*, ¶ 37).

Both ML Fashion's inventory and its FFE are collateral for a multi-million dollar loan between ML Fashion and ML Retail ("Loan"), which is secured by a Credit Agreement (attached as Exhibit 2 to the Complaint) and a Security Agreement (attached as Exhibit 3 to the Complaint), both of which have mandatory choice of law, forum, and/or venue provisions in Illinois. (Compl., ¶ 56). Menkin signed both of these Agreements on behalf of ML Fashion, making her a closely-related party to these agreements. (*Id.*). Goureau, as member of ML Fashion and signatory to the LLC Agreement individually, is also a closely-related party to the Credit and Security Agreements. (*Id.*) Lemonis, while in Illinois, signed the Credit Agreement and Security Agreement on behalf of ML Retail, and both Lemonis and ML Retail are located in Illinois. (*Id.*).

Without its inventory and the FFE, and the proceeds from the sale of the inventory, ML Fashion's full performance under the Credit Agreement and Security Agreement will be

impossible. (*Id.*, ¶ 57). Further, the jobs of the existing 33 part-time and full-time employees are jeopardized. (*Id.*, ¶¶ 57, 64).

### D. Menkin and Goureau Loot ML Fashion for Their Personal Purposes for Years and Then File Improper Lawsuits to Attempt to Avoid Liability

Following the formation of ML Fashion, Menkin served as ML Fashion's president. (Compl., ¶ 39). ML Retail invested significant sums into ML Fashion and its related to businesses to keep them afloat. (Compl., ¶ 41). Lemonis was never paid a salary for his role as the manager and an officer of ML Fashion, and never otherwise took any money out of the company. (*Id.*, ¶ 42).

Menkin and Goureau never put money into ML Fashion. (Compl., ¶ 43). Instead, Goureau, Menkin and Goureau's mother improperly took in excess of $2,000,000 from ML Fashion, including paying monies to Goureau's mother ($175,000 annually), who provided no services to ML Fashion and despite Menkin being instructed not to pay such monies to her mother. (Compl., ¶¶ 40, 42). Menkin and Gourea also repeatedly and improperly utilized ML Fashion's funds for their own personal purposes, including payments for personal expenses, payments to family members, cars, extensive travel, hotel stays, and a nanny. Throughout, Menkin and Goureau also continued to use without authority company credit cards and shipping accounts for their own personal use. (*Id.* ¶ 44). During that same period, Menkin and Goureau utilized Lemonis' name, image, and likeness, and his "The Profit" television series, to promote themselves and their business ventures. (*Id.*, ¶ 45).

In or about 2020, Lemonis discovered Menkin's and Goureau's misconduct and improper use of ML Fashion's funds for Menkin's and Goureau's personal expenses and diverting company assets. (*Id.*, ¶ 46).

On or about June 18, 2020, Menkin and Goureau filed simultaneous, duplicative lawsuits against, *inter alia*, Lemonis and ML Retail in Delaware state court (the "Delaware Action") and in the United States District Court for the Southern District of New York (the "New York Action") in an attempt to avoid culpability for their improper use of ML Fashion's funds for their own personal use and in a misguided scheme to attempt to extract even more money from ML Fashion, ML Retail, and Lemonis. (Compl., ¶ 47). Among other things, the Delaware Action seeks to prevent Lemonis and ML Retail from continuing to operate ML Fashion and to dissolve ML Fashion so that Menkin and Goureau can take ML Fashion's assets for themselves. (*Id.*, ¶ 48).

### E. DEFENDANTS SEIZE ML FASHION'S INVENTORY AND SELL IT AT THE GREENWICH PROPERTY WITHOUT ML FASHION'S AUTHORIZATION

Following the filing of the Delaware Action and the New York Action, Menkin and Goureau engaged in a further scheme and misconduct. (Compl., ¶ 49). In or about 2020, Menkin, Goureau, and Nagrani, a former ML Fashion employee (*id.*, ¶ 1), formed "Nobelle," a competing clothing store. Nagrani claims on social media posts that she is president of Nobelle, while both Nagrani and Menkin admit to founding Nobelle. (*Id.*, ¶ 50).

In or about August 2020, Nobelle, Menkin, and Nagrani seized ML Fashion's inventory, private brands, and products (the "Inventory") out of ML Fashion's locations in Illinois and began occupying and operating a retail store at the Greenwich Property in Connecticut under the "Nobelle" brand name to sell the Inventory, all without Lemonis', ML Fashion's, or ML Retail's authorization or consent. (Compl., ¶ 51). Specifically, assets and Inventory belonging to ML Fashion were removed from various locations in Illinois and now are located in the Nobelle store, causing harm in Illinois. (*Id.*, ¶ 52). Included among the Inventory Menkin and Goureau removed from ML Fashion's Illinois stores are exclusive, privately-branded ML Fashion products. (*Id.*, ¶ 53).

Nobelle, Menkin, and Nagrani are selling ML Fashion's Inventory at the Greenwich Property without ML Fashion's authorization or consent, and are keeping the proceeds from such sales for themselves, without making any payments to ML Fashion. (Compl., ¶ 54). Nobelle, Menkin, and Nagrani are also utilizing the FFE owned by ML Fashion at the Property, without ML Fashion's authorization or consent. (*Id.*, ¶ 55).

Nobelle, Menkin, and Nagrani are promoting Nobelle's illicit business at the Greenwich Property through a website and social media pages, including on Facebook and Instagram, which depict Defendants' possession of the Greenwich Property, sales of the Inventory and use of the FFE. (Compl., ¶ 59 and Exhibits 4-6 thereto). Menkin admits her affiliation as a co-founder of Nobelle, along with Nagrani, in her Instagram post. (*Id.*, ¶ 60 and Exhibit 5 thereto).

Plaintiffs believe that Goureau has aided and abetted Nobelle's and Menkin's improper seizure and sale of ML Fashion's Inventory, and their improper occupation and use of the Greenwich Property and the FFE, by, *inter alia*, misappropriation and unauthorized use of ML Fashion computers to set up computer software accounts on Nobelle's behalf at the Greenwich Property. These computers further contain ML Fashion confidential financial information. (Compl., ¶ 61). Moreover, Menkin and Goureau are breaching their obligations to both ML Fashion and ML Retail under the LLC Agreement by operating a business, Nobelle, that is in direct competition with ML Fashion. (*Id.*, ¶ 62).

Plaintiffs are being damaged by Defendants' ongoing misconduct, including due to the fact that Defendants' unauthorized sale of ML Fashion Inventory formerly operated by ML Fashion is confusing consumers and damaging ML Fashion's reputation and goodwill, is preventing ML Fashion from being able to perform under the Credit and Security Agreements, and is jeopardizing the continued employment of ML Fashion's 33 employees. (Compl., ¶ 64).

Accordingly, on August 31, 2020, Plaintiffs filed the Complaint against Defendants, asserting nine causes of action and seeking injunctive relief: (1) conversion by ML Fashion against all Defendants; (2) breach of fiduciary duty by ML Fashion against Menkin and Goureau; (3) breach of contract by both Plaintiffs against Menkin and Goureau; (4) fraud by both Plaintiffs against all Defendants; (5) tortious interference with Credit and Security Agreements by both Plaintiffs against all Defendants; (6) tortious interference with noncompetition agreement by both Plaintiffs against all Defendants; (7) aiding and abetting by both Plaintiffs against Menkin, Goureau, and Nagrani; (8) false advertising under the Lanham Act by ML Fashion against all Defendants; (9) unfair competition under the Lanham Act by ML Fashion against all Defendants; and (10) injunctive relief by both Plaintiffs against all Defendants.

## III. ARGUMENT

### A. Plaintiffs Are Entitled to Emergency Injunctive Relief

An injunction is appropriate when a party demonstrates (1) some likelihood of succeeding on the merits; and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992); *see also D.U. v. Rhoades,* 825 F.3d 331, 338 (7th Cir. 2016) (noting that district court "may have overstated [movant's] burden" by requiring it to show "more than a negligible chance" of prevailing on the merits of its claim at injunction stage).

Upon satisfying these threshold inquiries, the court must consider two additional issues: whether the irreparable harm the non-moving party will suffer if preliminary relief is granted is greater than the irreparable harm to the moving party if relief is denied; and whether the public interest weighs in favor of granting the injunctive relief. *Abbott Labs.*, 971 F.2d at 12. Importantly, the Court should balance the potential harms on a sliding scale against Plaintiffs' likelihood of success. In other words, the greater Plaintiffs' likelihood of success, "the less strong a showing"

8

Plaintiffs "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

In this case, Plaintiffs satisfy each factor showing their need for injunctive relief.

### 1. Plaintiffs Have a Likelihood of Success on the Merits

Although Plaintiffs need only demonstrate a likelihood of success on the merits of one of their claims in order to obtain injunctive relief, Plaintiffs are likely to succeed on **all** of their claims.

With respect to conversion, "a plaintiff must show (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (internal quotation marks omitted) (citing *De St. Aubin v. Johnson*, 151 Ill. App. 3d 184, 188 (Ill App. Ct. 1 Dist. 1986)). Here, Defendants have stolen ML Fashion's Inventory and FFE without ML Fashion's authorization. (Compl., ¶ 68). ML Fashion unequivocally owns the Inventory and FFE, including because the LLC Agreement expressly provides that ML Fashion's members (*e.g.*, Menkin and Goureau) have no ownership interest in the Inventory and FFE. (*Id.*, ¶¶ 29, 67 and Ex. 1 thereto at Section 2.7). Because Defendants have no right to the Inventory and FFE, and ML Fashion is the exclusive owner of the Inventory and FFE, it is entitled to immediate possession of the property. ML Fashion has also demanded the return of the Inventory and FFE. (*Id.*, ¶¶ 63, 69).

With respect to breach of fiduciary duty, a plaintiff must show: "[1] a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which plaintiff complains." *Gross v. Town of Cicero*, 619 F.3d 697, 708 (7th Cir. 2010) (internal quotation marks omitted) (brackets in original). For LLCs that, like ML Fashion, are formed under the laws of Delaware, "LLC managers **and members** owe traditional fiduciary duties of loyalty

9

and care to each other and to the company." *Northbound Group, Inc. v. Norvax, Inc.*, 5 F. Supp. 3d. 956, 980 (N.D. Ill. 2013) (emphasis added) (citing *Zimmerman v. Crothall*, 62 A.3d 676, 701 (Del. Ch. 2013). Here, Menkin and Goureau are members of ML Fashion and thus owe fiduciary duties to ML Fashion. (Compl., ¶¶ 73-75). Menkin and Goureau have breached those duties by, *inter alia*, seizing ML Fashion's Inventory and FFE, utilizing that Inventory and FFE for Menkin's and Goureau's own benefit at ML Fashion's expense, and operating a retail business, Nobelle, that competes with ML Fashion's own retail business. (*Id.*, ¶ 76).

With respect to breach of contract, a plaintiff must demonstrate "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendants; and (4) the resultant damages." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010). Here, there is an indisputably valid contract signed by both Menkin and Goureau: the LLC Agreement. (Compl., ¶¶ 81-82). Plaintiffs have fully performed under that LLC Agreement. (*Id.*, ¶ 83). Menkin and Goureau breached Section 7.7(b) of the LLC Agreement by operating a fashion retail business, Nobelle, that is competing with ML Fashion. (*Id.*, ¶ 84). ML Fashion and ML Retail have been damaged as a result, not only in the form of lost profits, but in the impact on ML Retail's membership interest in ML Fashion and the impact of the breach on ML Fashion's ability to repay its loan from ML Retail, which jeopardizes the continued viability of ML Fashion and the employment of its 33 employees. (*Id.*, ¶¶ 86-87).

With respect to fraud, Illinois law requires a plaintiff to demonstrate: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018). Here, Menkin and Goureau falsely represented that they would

not personally take possession, custody, and control of ML Fashion FFE and Inventory, but would only use their positions of trust within ML Fashion to advance the company's interests, and ML Retail and ML Fashion justifiably relied upon those misrepresentations when entering into the LLC Agreement and, in the case of ML Retail, providing funding to ML Fashion, suffering damages as a result. (Compl., ¶¶ 91-94).

With respect to tortious interference with a contract, a plaintiff must show "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach." *Prince v. Zazove*, 959 F.2d 1395, 1397 (7th Cir. 1992). Conduct by the defendant rendering performance impossible is sufficient to demonstrate the fourth element of a tortious interference claim. *See, e.g., George A. Fuller Co., Div. of Northrop Corp. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330-31 (7th Cir. 1983).

Here, Plaintiffs have amply demonstrated tortious interference with respect to the Credit and Security Agreements and the LLC Agreement. In particular, Menkin and Goureau, and through them Nobelle and Nagrani, are aware of the Credit and Security Agreements by virtue of Menkin's and Goureau's roles as members and/or officers of ML Fashion, and yet Defendants have rendered ML Fashion's full performance under those agreements impossible by improperly seizing the Inventory and FFE. (Compl., ¶¶ 96-100). Menkin and Goureau also induced each other to breach the noncompetition provision of the LLC Agreement, with full knowledge of that provision. (*Id.*, ¶¶ 103, 106). Nobelle also knew of the LLC Agreement's noncompetition provision by virtue of Menkin's control over Nobelle, and Plaintiffs believe that Nagrani knew by

11

virtue of her past employment with ML Fashion and interactions with Menkin, yet Nobelle and Nagrani also induced Menkin and Goureau to compete with ML Fashion in violation of the LLC Agreement. (*Id.*, ¶¶ 104-105, 107).

With respect to aiding and abetting, a plaintiff must demonstrate the following: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Scanlan v. Eisenberg*, 2011 U.S. Dist. LEXIS 24681, at *26-27 (N.D. Ill. Mar. 9, 2011). Plaintiffs have amply demonstrated that Menkin, Goureau, and Nagrani aided and abetted Nobelle's improper conduct, including its conversion of the Inventory, FFE, and computers at the Greenwich Property in order to operate a retail business in competition with ML Fashion's business, while Nagrani has also aided and abetted Menkin's and Gourea's breaches of the LLC Agreement. (Compl., ¶¶ 110-16).

With respect to false advertising and unfair competition under the Lanham Act, a plaintiff must show: "(1) that the defendant used a false designation of origin or false description or representation in connection with goods and services; (2) that such goods and services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation." *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999); *see also Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007) "a plaintiff must show that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience."). Defendants have falsely represented, in interstate commerce via Internet and social media advertising, that they are selling goods belonging to

Nobelle at a retail location operated by Nobelle when, in fact, Defendants are selling Inventory that is owned by ML Fashion without ML Fashion's authorization. (Compl., ¶¶ 118-122, 124-128). Defendants' misconduct is causing harm to Plaintiffs, including to their reputations and goodwill, and is jeopardizing ML Fashion's ability to continue to employ its 33 employees. (*Id.* ¶¶ 122, 128).

Accordingly, Plaintiffs are likely to succeed on the merits of their claims.

### 2. Without a TRO, Plaintiffs Will Suffer Irreparable Harm

Plaintiffs are suffering and will continue to suffer irreparable harm unless injunctive relief is granted. Among other things, Plaintiffs are being irreparably harmed by Defendants' engaging in competition with ML Fashion's business and by Defendants' false advertising and unfair competition under the Lanham Act.

Courts in this District often apply a presumption of irreparable harm where violations of the Lanham Act are alleged. *See, e.g., Neuros Co. v. Kturbo, Inc.*, 2013 U.S. Dist. LEXIS 56095, at *12-13 (N.D. Ill. Apr. 17, 2013). Even where they do not apply such a presumption, courts in this District hold that Lanham Act violations cause damage to "reputation and customer goodwill," which "cannot be adequately remedied by payment of damages." *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 U.S. Dist. LEXIS 75916, at *87-89 (N.D. Ill. June 11, 2015).

Similarly, the violation of a non-competition agreement "is a canonical form of irreparable harm" because "[t]he injuries that flow from the violation of a non-compete are difficult to prove and quantify." *Turnell v. Centimark Corp.*, 796 F.3d 656, 666 (7th Cir. 2015). Indeed, Menkin and Goureau expressly acknowledged in the LLC Agreement that their competing with ML Fashion would cause irreparable harm to ML Fashion, and authorized ML Fashion to seek injunctive relief as a result. (Compl., ¶ 143 and Ex. 1 thereto at Section 7.7(d)).

13

Moreover, "potential loss of property, employees, or its entire business, as well as damage to its goodwill" are harms "both real and irreparable." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1090 (7th Cir. 2008) (emphasis added); *see also Abbott Labs. v. Sando, Inc.*, 500 F. Supp. 2d 807, 843 (N.D. Ill. 2007) (finding irreparable harm where, *inter alia*, movant "will be constrained to terminate 190 sales representatives").

Here, Defendants' violations of the Lanham Act are damaging Plaintiffs' reputations and goodwill, and Menkin and Goureau are blatantly breaching the noncompetition provision of the LLC Agreement. (Compl., ¶¶ 80-89, 122, 128). Moreover, ML Fashion's inability to perform under the Credit and Security Agreements threatens its viability and its ability to continue to employ 33 individuals. (*Id.* ¶¶ 64, 122, 128, 131, ). Plaintiffs have demonstrated irreparable harm.

### 3. Granting Injunctive Relief Will Not Result In Greater Harm To Defendants And Is In The Public Interest

Injunctive relief is warranted because Defendants will not suffer greater harm than that suffered by Plaintiffs, and such relief is in the public interest. With respect to the balance of "harms," the only "harm" to Defendants is that they will be temporarily barred from using Inventory and FFE they have no right to utilize, from operating a business at a location at which they have no legal right to be, and from competing with ML Fashion in violation of the LLC Agreement. Plaintiffs, by contrast, will suffer harm that, as set forth above, cannot be compensated by money damages, including damages to their reputations and goodwill, and the endangerment of the continued employment of 33 individuals by ML Fashion. (Compl., ¶¶ 64, 122, 128, 131).

The public interest also favors injunctive relief. The public has an interest both in truthful advertising and business practices, and in enforcement of contracts. *Market Track*, 2015 U.S. Dist. LEXIS 75916, at *90; *nClosures Inc. v. Block & Co.*, 2013 U.S. Dist. LEXIS 5700, at *12 (N.D. Ill. Jan. 15, 2013). In light of Defendants' misleading of consumers in violation of the Lanham

14

Act, and their breaches of, or tortious interference with, the LLC Agreement and/or Credit and Security Agreements, the public interest weighs heavily in favor of injunctive relief.

### 4. Only a Nominal Bond Should Be Required.

Plaintiffs believe that Defendants are not subject to any damages if this TRO is improvidently granted. To the extent the Court feels a bond is necessary, Plaintiffs request that they be required to post a nominal amount of $10,000.

## IV. CONCLUSION

**WHEREFORE**, Plaintiffs ML Fashion, LLC and ML Retail, LLC respectfully request that this Court:

1. Enter an injunction in the form set forth in the Proposed Order submitted herewith; and

2. Award Plaintiffs such other relief as the Court may deem just and proper.

Dated: August 31, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By: *Michael D. Wexler*
   Michael D. Wexler
   Robyn E. Marsh
Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5559

Jesse M. Coleman (*pro hac vice application to be filed*)
700 Milam Street, Suite 1400
Houston, Texas 77002
(713) 238-1805

*Attorneys for Plaintiffs ML Fashion, LLC and ML Retail, LLC*