IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

---

ML FASHION, LLC and ML RETAIL, LLC,

    Plaintiffs,

    v.

NOBELLE, STEPHANIE MENKIN, SARIT MAMAN NAGRANI, and NICOLAS GOUREAU,

    Defendants.

Case No. 1:20-cv-05124

**JURY DEMAND**

---

**PLAINTIFFS ML FASHION, LLC AND ML RETAIL, LLC'S
STATEMENT TO THE COURT**

Pursuant to the Court's minute entry on September 3, 2020, Plaintiffs ML Fashion, LLC ("ML Fashion") and ML Retail, LLC ("ML Retail") (collectively, "Plaintiffs") hereby submit their statement to the court. In support, Plaintiffs respectfully submit the following:

**I.    PRELIMINARY STATEMENT**

All of Plaintiffs' claims before this Court involve tortious conduct, contractual breaches, and other actions that originate in Illinois and are governed by Illinois choice of law and venue contractual provisions. In short, Defendants converted exclusive private inventory from Plaintiffs' stores in Illinois for use in a competing business at Plaintiffs' former store in Greenwich, Connecticut, along with ML Fashion's fixtures, furniture, and equipment (FFE) and computers containing confidential ML Fashion information. Defendants continue to unfairly compete with ML Fashion in Illinois by falsely advertising via the Internet and selling exclusive property owned by ML Fashion from the Illinois stores but repackaged as their own; and by operating a competitive fashion retail business that uses ML Fashion's own property, confidential information and computers. This property further serves as collateral for a loan extended by ML Retail with

1

mandatory jurisdiction, forum and venue selection clauses in Illinois, of which Defendants are fully aware and tortiously interfere with in Illinois.

Ultimately, the Delaware and New York Lawsuits should be transferred to this forum once those courts dismiss certain strategic and meritless claims advanced by certain Defendants in this case, and once those courts grant motions to transfer venue. Regardless of where the Delaware and New York Lawsuits are ultimately adjudicated, however, this Court is the only appropriate forum to adjudicate the issues between the parties *in this lawsuit*, and Goureau and Menkin are actively trying to avoid this jurisdiction, forum, and venue.

Indeed, since Plaintiffs filed their motion for temporary restraining order, counsel for Defendants' Menkin and Goureau in the Delaware and New York Lawsuits responded to Plaintiffs demand letter admitting to much of the conduct sought to be enjoined. (*See* September 1, 2020, letter, attached here as **Exhibit 1**). Specifically, these Defendants admit:

- Menkin and Nagrani have started a new separate and competing business, Nobelle.

- They are selling ML Fashion's products that Defendant Menkin took from MARCUS stores.

- The products taken from ML Fashion stores "may carry some of the same brands MARCUS carries[.]"

- They are using a computer that they took from ML Fashion for their business. and

- They are using ML Fashion's FFE in the Greenwich store, including "(1) shelving and racking attached to the walls, (2) light fixtures consisting of chandeliers and track lights, and (3) stock racking in the basement of the store."

*Id*. at 1-2.

While Defendants seek to mischaracterize the facts *surrounding these facts* to dilute their liability, they demonstrate the foundations of Plaintiffs' claims are undisputed.

2

## II. WHY THE COMPLAINT STATES A CLAIM UNDER THE LANHAM ACT

On August 31, 2020, Plaintiffs filed a Verified Complaint ("Complaint") against Defendants Nobelle ("Nobelle"), Stephanie Menkin ("Menkin"), Sarit Maman Nagrani ("Nagrani"), and Nicolas Goureau ("Goureau") (collectively, "Defendants") stating a claim and seeking injunctive and other relief for, among other things, Defendants' false advertising and unfair competition under the Lanham Act.[1] (Dkt. No. 1). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016).

In support of Plaintiffs' Lanham Act claims, the Verified Complaint shows that Defendants illegally seized computers, fixtures, exclusive privately branded fashion products from the "MARCUS" brand and other inventory in Illinois owned by ML Fashion (Compl. ¶¶ 51-53); opened up a retail store called "Nobelle" in ML Fashion's former MARCUS-branded Connecticut storefront in direct competition with ML Fashion (Compl. ¶¶ 35-36; 50-55); and are advertising and selling ML Fashion's inventory at that competing retail store in interstate commerce for Defendants' own benefit (Compl. ¶¶ 50-55, 58-62); all the while jeopardizing the jobs of Ml Fashion's 33 part-time and full time employees, the continuing viability of ML Fashion and depleting collateral for loans made to ML Fashion by ML Retail allowing it to operate. (*See* Compl. ¶¶ 2, 35-38, 50-64).

---

[1] Plaintiffs' Complaint is incorporated here by reference.

3

### A. Plaintiffs state a viable claim for false advertising under Section 43(a)(1)(B) of the Lanham Act.

To prevail on a false advertising claim under the Lanham Act, Plaintiffs must establish that (1) Defendants made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) Plaintiffs have been or are likely to be injured as a result of the false statement. *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018); *see also Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir.2007) (explaining that "[i]n order to establish a claim of false or deceptive advertising under § 43(a) of the Lanham Act, a plaintiff must show that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience"). The central question is "whether the defendant made an explicit representation of fact that on its face conflicts with reality." *Eli Lilly*, 893 F.3d at 382.

Here, Defendants have falsely represented, in interstate commerce via the Internet and social media advertising, that they are selling goods belonging to Nobelle at a retail location operated by Nobelle when, in fact, Defendants are selling Inventory, including but not limited to MARCUS private label product, that is owned by ML Fashion without ML Fashion's authorization. (Compl., ¶¶ 35-64, 118-122, 124-128). Because Nobelle's statement the Inventory belongs to it is literally false based on ML Fashion's actual ownership and is therefore necessarily deceiving to customers, extrinsic evidence of confusion is not required. *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018).

In addition to Plaintiffs' Verified Complaint, which must be taken as true, Plaintiffs further attached Defendants' Internet social media postings advertising and selling ML Fashion's inventory, private brands, and products in interstate commerce as Nobelle's own products.

4

(Compl., Exs. 4-6). Moreover, and as also alleged in the Complaint, the specific products advertised belong to ML Fashion. (Compl., ¶ 59; *see also* August 31, 2020 Supplemental Declaration of Marcus Lemonis, ¶ 8-10, attached hereto as **Exhibit 2**). Further, the inventory, private brands, and products Defendants seized originated out of ML Fashion's locations in Illinois. (Compl., ¶ 51).

Defendants' misconduct is causing harm to Plaintiffs, including to their reputations and goodwill, the loss of a unique retail property in Greenwich, damage to ML Fashion's brands and businesses by Defendants' operation of a competing business, deception of the public as to ML Fashion's exclusive products, and is jeopardizing ML Fashion's ability to perform under the Security and Credit Agreements to continue to employ its 33 employees. (*Id*. ¶¶ 122, 128; Ex. 1, ¶ 11 ).

B. **Plaintiffs state a viable claim for unfair competition by false designation of origin and infringement with an unregistered trademark under Section 43(a)(1)(A) of the Lanham Act.**

To state a claim under the Lanham Act for an unregistered mark, as well as claims for common law trademark, unfair competition, and violation of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 817 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017). Section 43(a) claims proceeding under theories of "false designation of origin" and "unfair competition" mirror those for a trademark infringement claim. *Long Grove Investments, LLC v. Baldi Candy Co*., 397 F. Supp. 3d 1190, 1197 (N.D. Ill. 2019), *appeal dismissed*, 19-2658, 2019 WL 8059540 (7th Cir. Nov. 19, 2019).

Here, ML Fashion owns privately-branded ML Fashion products, including the MARCUS brand, which it has publicly and continuously used in US commerce exclusively throughout its

MARCUS stores nationwide. (*See* Compl., ¶¶ 51-53; Del. Compl. ¶¶ 156-165.) ML Fashion, as the first user of the mark, owns the mark. *Id.*; *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015) ("The party who first uses a mark in commerce is said to have priority over other users.") The MARCUS brand unregistered mark is distinctive because it is descriptive of fashion businesses and brands specific to Marcus Lemonis and has acquired secondary meaning. Plaintiffs' false designation of origin claim is further based on a reverse passing off theory because, as set forth above, Defendants have wrongfully represented that Plaintiffs' goods are their own. Defendants' passing off Plaintiffs' exclusive branded goods as their own is likely to cause customer confusion as to the source, affiliation, connection, and sponsorship of goods because Defendants are merely repackaging Plaintiffs' goods as their own. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31, 123 S. Ct. 2041, 2046, 156 L. Ed. 2d 18 (2003) (finding false designation of origin claim "would undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own."); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999)).

### III. BACKGROUND ON THE DELAWARE LAWSUIT

On June 18, 2020, Plaintiffs Goureau and Menkin filed a Verified Complaint against Defendant ML Retail, LLC; Defendant Marcus Lemonis, LLC; Defendant MLG Retail, LLC ("MLG Retail"); Defendant Marcus Lemonis, individually ("Lemonis"); Defendant Roberta Raffel a/k/a Bobbi Lemonis ("Raffel"); and Nominal Defendant ML Fashion, LLC; Cause No. 2020-0486-MTZ, in the Court of Chancery of the State of Delaware (the "Delaware Lawsuit").[2]

---

[2] In support, Plaintiffs attached the following exhibits to the Complaint: Exhibit A: March 29, 2016, the Limited Liability Company Agreement of ML Fashion, LLC; Exhibit B: March 29, 2016 Credit Agreement between ML Fashion, LLC and ML Retail, LLC; Exhibit C: March 29, 2016 Security Agreement between ML Fashion, LLC and ML Retail, LLC; and Exhibit D: March 17, 2020 Letter from Stephanie Menkin to Nicolas Goureau.

6

On August 24, 2020, Goureau and Menkin filed a first amended complaint ("Delaware Complaint," attached hereto as **Exhibit 3**) in an attempt to plead around Defendants' pending motion to dismiss. Broadly, the Delaware lawsuit is a shareholder derivative action alleging breaches of various contractual and fiduciary duties by the managing member of ML Fashion, Marcus Lemonis, in operation of the company.

By way of background, Nicolas Goureau and Stephanie Menkin ran a failing clothing retailer that, as they told millions of television viewers of the CNBC television series "The Profit,"[3] lost "[a]bout half a million" dollars in 2013.[4] Those losses followed what Goureau described as "poor business management" and work that "wasn't up to par." Goureau told millions of television viewers that he was worried about "the bank," "the landlords," and "the people that call me for bills," likely referencing, among other things, Plaintiffs' default under a store lease in Atlanta.

Hoping to save their business, in or about June 2014, Goureau and Menkin begged Marcus Lemonis to invest in their business as part of his successful television series "The Profit." *See* Del. Compl. ¶ 43. Lemonis agreed to invest $800,000, taking a significant risk on a business that had lost hundreds of thousands of dollars the year before. *See id.* Before investing, Lemonis told Goureau and Menkin, on national television and in no uncertain terms, that if he took on this risk, he would be in control of the business: "Let me be very clear. I'm going to be 100% in charge." Goureau and Menkin agreed to these terms, shook Lemonis' hand, and eagerly welcomed his

---

[3] *Available at* https://www.youtube.com/watch?v=bEhjsXfFCyk.
[4] Courts in Illinois "may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Ahmad v. Sekely*, 2018 WL 4562189, 2018 IL App (4th) 180129-U, ¶ 26 ("We find the trial court did not abuse its discretion in taking judicial notice of the prevalence of online media, including Facebook.")

significant investment into their struggling business. But Goureau and Menkin had other plans for Lemonis' funds.

Lemonis, Goureau and Menkin formed ML Fashion, LLC to not only oversee Goureau and Menkin's struggling retail brand "Courage B," but to allow Goureau and Menkin to help manage other brands acquired by Lemonis as well. *See* Del. Compl. ¶ 61. In an interview for "The Profit Effect" television special, which aired in or about January 2017, Goureau and Menkin raved about this opportunity: as Goureau put it, "[t]he way our roles have really evolved is a huge credit to Marcus."[5] Lemonis eventually gave Goureau opportunities within Lemonis' other business ventures, including a job at a publicly-traded company, Camping World, with a salary of $300,000 per year—a far cry from being the owner of a failing clothing retailer just a few years before. *See* Del. Compl. ¶ 168.

Lemonis invested heavily in ML Fashion, without ever receiving a payment from ML Fashion, and made business decisions aimed at saving Goureau and Menkin struggling business. Thanks to Lemonis' investments and business decisions, ML Fashion still operates today, still is paying employees, and still sells retail products nationwide. *See, e.g.,* Del. Compl. ¶ 19.

Goureau and Menkin are still the majority equity owners of ML Fashion. *See* Del. Compl. ¶¶ 17-18. Yet, unlike Lemonis, ***Goureau and Menkin never put any money into ML Fashion***— they only took money out. Over the years, they extracted well in excesses of $2 million from the company in the form of undeserved escalated salaries and/or consulting fees in the hundreds of thousands of dollars per year, as well as other monetary perks, and their use of company funds to pay personal expenses, buy extravagant cars, travel, stays at the poshest hotels and even pay for a nanny.

---

[5] https://www.youtube.com/watch?v=gDsaNA6fKg8.

Moreover, since appearing on Lemonis' "The Profit" television series, Goureau and Menkin continuously used Lemonis' name, image, and likeness and his "The Profit" television series to boost their own profiles. Both Goureau and Menkin frequently posted pictures of themselves with Lemonis, or used his name or "The Profit" in their social media posts.[6] In or about July 2018, Menkin appeared on another episode of "The Profit," helping Lemonis coach a struggling business owner, and promoted the appearance on Twitter.[7] Menkin posted about Lemonis, "The Profit," and Lemonis' "MARCUS" brand as recently as late 2019 and early 2020, and even today, her Instagram profile links to Lemonis' "MARCUS" brand and "The Profit" TV series.[8]

For years, Goureau and Menkin were content to extract millions from ML Fashion and use Lemonis' fame to promote themselves. But in late 2018, Menkin, and Goureau in particular, apparently began to sour on their relationship with Lemonis as Plaintiffs' treachery began to reveal itself. Goureau was fired from his position at Camping World, *see* Del. Compl., ¶ 168, due to issues in his personal life that affected his job performance and eventually led to, among other things, Goureau being arrested in Miami, Florida in or about September 2019. Ironically, Goureau continues to leverage his association with Lemonis—now a negative association—to promote his ventures, bragging on social media that the Complaint "is just the tip of the iceberg" and that Goureau is "working with NetFlix" to produce a documentary about Lemonis.[9]

---

[6] https://twitter.com/NGoureauNYC/status/874739760782348290?s=20; https://twitter.com/NGoureauNYC/status/1014337877331804160?s=20.
[7]. https://twitter.com/shopmarcus/status/1021950143594196992?s=20.
[8] https://www.instagram.com/stephanie_goureau/.
[9] https://twitter.com/NGoureauNYC/status/1279174182836883457?s=20; https://twitter.com/NGoureauNYC/status/1275081999523311627?s=20.

Goureau and Menkin lived lavish lives, promoted themselves and wasted company assets, at ML Fashion's and Lemonis' expense, while Lemonis shouldered all of the losses of the business. Lemonis pumped money into a failing business with partners, Goureau and Menkin, who were only interested in extracting as much money from ML Fashion as they could for their own personal gain.

In the Delaware Lawsuit, Goureau and Menkin concocted a false and convoluted theory that Lemonis' investments and business decisions aimed at saving their struggling business are a fraudulent scheme that Lemonis perpetrated against Goureau and Menkin. They are wrong and simply trying to hide their own malfeasance. Nevertheless, the Delaware Lawsuit is nothing more than a run-of-the-mill suit for purported breach of contract (which ultimately will also fail). Goureau and Menkin's farcical attempt to extract even more money from Lemonis and ML Fashion fails, and all claims other than breach of contract should be dismissed for the reasons set forth in the currently pending motion to dismiss.

## IV. BACKGROUND ON THE NEW YORK LAWSUIT

Also on June 18, 2020—the same day as the Delaware Lawsuit—Plaintiffs Goureau and Menkin filed a nearly identical lawsuit against Defendants ML Retail; Marcus Lemonis, LLC; Lemonis; and Nominal Defendant Gooberry Corp. ("Gooberry"), Civil Action No. 20-cv-4691, in the United States District Court for the Southern District of New York (the "New York Lawsuit"). On August 17, 2020, Goureau and Menkin filed a first amended complaint ("New York Complaint," attached hereto as **Exhibit 4**) adding Machete Corporation d/b/a Machete Productions ("Machete") in an attempt to plead around Defendants' to be filed motion to dismiss. Broadly, the New York lawsuit is a shareholder derivative action alleging breaches of various contractual and fiduciary duties undertaken by Marcus Lemonis in operation of ML Fashion, though purportedly on behalf of Gooberry.

10

It cannot be disputed that the Delaware Lawsuit and New York Lawsuit share the same common nucleus of operative fact—namely disagreements by minority shareholders with the business decisions made by Lemonis through various entities. Moreover, the parties, allegations, and causes of action in the Delaware Lawsuit and New York Lawsuit are nearly identical in most respects, with only purposeful, strategic differences. Indeed, a line-by-line comparison of the two complaints show the causes of action and facts are nearly identical with only strategic differences. *See* **Appendix. 1 (Comparison of Lawsuits' Claims)**; **Appendix 2, (Comparison of Lawsuits' Facts).**

No matter which facts are cherry picked as distinct, the Delaware and New York Lawsuits indisputably share the same common nucleus of operative fact. *Relander v. Phoenix Mut. Life Ins. Co.*, 262 Ill. App. 3d 525, 636 N.E.2d 944 (3d Dist. 1994) (stating that the proper test to determine identity of causes of action is whether actions are based upon common core of operative facts or whether same evidence would sustain both actions); s*ee also BMO Harris Bank, N.A. v. K & K Holdings, LLC*, 2016 IL App (2d) 150923, 406 Ill. Dec. 29, 59 N.E.3d 807 (App. Ct. 2d Dist. 2016), appeal denied, 406 Ill. Dec. 320, 60 N.E.3d 871 (Ill. 2016) (stating that courts apply a transactional test in determining if there is an identity of actions; under which separate claims will be considered the same cause of action for purposes of res judicata if they arose from a single group of operative facts, regardless of whether they assert different theories of relief, and under this approach the nature of the evidence needed to prove the claims is relevant for demonstrating the claims arose from the same group of operative facts, however, the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arose from the same transaction). For example, the New York Lawsuit alleges that:

> Defendant Marcus Lemonis is a false prophet who uses his fame and fortune to steal small businesses from everyday Americans. Through his television show, "The Profit," Lemonis preys on small businesses and slowly drowns them in debt in order to expand his own empire. On the show, Lemonis portrays himself as the savior to small businesses, when in reality, he is a cancer that destroys the businesses he purports to save from the inside out.

(Ex. 4, NY Compl., ¶ 2). This summary is nearly an exact mirror of the Delaware Lawsuit's opening summary:

> Through his television show, 'The Profit,' [Lemonis] presents himself as the savior to struggling small business owners, all the while preying on the business he purports to be saving. Lemonis strategically and deliberately drowns these businesses in debt to him and his entities in order to foreclose on them and take their assets and intellectual property to expand his empire.

(Ex. 3, Del. Compl., ¶ 2).

Because each lawsuit is based on the parties' entire business dealings across various jointly-owned entities, their common nucleus of operative fact mandates dismissal as improper claim splitting. *Piagentini v. Ford Motor Co.*, 366 Ill. App. 3d 395, 398, 852 N.E.2d 356, 359–60 (1st Dist. 2006), *appeal denied, judgment vacated,* 228 Ill. 2d 552, 886 N.E.2d 1025 (2008) ("That is, a plaintiff is not permitted to sue for part of a claim in one action and then sue for the remainder in another action. Rather, the law requires that a plaintiff must assert all the grounds of recovery he may have against the defendant, arising from a single cause of action, in one lawsuit").

## V. WHY THE CLAIMS HERE CANNOT BE ADVANCED IN THE FIRST FILED DELAWARE NOR NEW YORK LAWSUITS

Plaintiffs' claims in this lawsuit cannot be advanced in either the Delaware nor New York shareholder derivative lawsuits because: 1) they arise from distinct, subsequent and tortious activities committed in Illinois and Connecticut, and 2) no Court but this one has jurisdiction over these activities because they both occurred in Illinois and implicate agreements with mandatory forum selection clauses.

First, Defendants' conduct at issue here arises from a set of facts with a different jurisdictional location than the Delaware and New York Lawsuits. Properly understood, the Delaware and New York Lawsuits are shareholder derivative actions based on the minority shareholders' (Menkin and Goureau) disagreements with the business decisions made by manager Marcus Lemonis in operation of ML Fashion. This action involves Menkin and Goureau's *subsequent* tortious activities in Illinois by seizing Inventory, which is also collateral for the loan extended by ML Retail with mandatory jurisdiction, forum and venue selection clauses in Illinois, from ML Fashion's Illinois locations and transferring it to Connecticut for advertising and sale at their competing business Nobelle. (Compl., ¶ 51). This lawsuit involves a distinct species of harm—namely conversion of property and competitive business activities—for which there is no geographic connection to either Delaware nor New York.

Indeed, only this Court has jurisdiction over the tortious activities committed in Illinois. The theft of Inventory and competitive business underlying this lawsuit did not occur in either Delaware nor New York, and neither of those Courts have jurisdiction over this conduct. As such, there is no jurisdictional basis to proceed anywhere other than Illinois. Defendants' conduct here also tortiously interfered with the Credit and Security agreements they had knowledge as members of ML Fashion, both of which contain mandatory choice of law, jurisdiction, and venue provisions in Illinois.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ML Fashion, LLC and ML Retail, LLC respectfully request all relief the Court deems just and proper.

13

Dated:  September 9, 2020                                  Respectfully submitted,

SEYFARTH SHAW LLP

By: *Michael D. Wexler*
   Michael D. Wexler
   Robyn E. Marsh
Willis Tower
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5559

Jesse M. Coleman
(admitted *pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas  77002
(713) 238-1805

*Attorneys for Plaintiffs ML Fashion, LLC and ML Retail, LLC*

**Appendix 1:**
**Common Claims in the Delaware and New York Lawsuits**

| Claim | DE | NY | Main Distinction |
|---|---|---|---|
| Fraudulent Inducement—Direct Claim against Lemonis, ML Retail, and ML, LLC. | Count 1 | Count 1 | Claim in NY is also asserted against Machete, although DE Complaint includes allegations regarding Macehete's role (DE Compl. ¶¶ 53-54) |
| Fraud—Direct Claim against Lemonis, ML Retail, and ML, LLC. | Count 2 | Count 2 | None, except allegations relate to Gooberry rather than ML Fashion. |
| Breach of Fiduciary Duty—Derivative Claim against Lemonis. | Count 3 | Count 3 | Derivative party is Gooberry in NY, ML Fashion in DE. |
| Breach of Fiduciary Duty—Direct and Derivative Claim against Lemonis, ML Retail, and ML, LLC. | Count 4 | Count 3 | DE adds direct claims against ML Retail and ML, LLC. |
| Aiding and Abetting—Direct Claim against Raffel. | Count 5 | N/A | Not alleged in NY. |
| Breach of the Implied Covenant of Good Faith and Fair Dealing—Direct and Derivative Claim Against Lemonis, ML Retail, and ML, LLC. | Count 6 | Count 4 | None. |
| Breach of ML Fashion's LLC Agreement—Direct and Derivative Claim Against Lemonis, ML Retail, and ML, LLC. | Count 7 | N/A | Breach of contract not expressly alleged in NY. |
| Unjust Enrichment—Direct and Derivative Claim Against Lemonis, ML Retail, and ML, LLC. | Count 8 | Count 5 | DE includes direct claim; otherwise none. |
| Gross Mismanagement—Derivative Claim Against Lemonis, ML Retail, and ML, LLC. | Count 9 | Count 7 | None. |
| Waste and Misappropriation of Corporate Assets—Derivative Claim Against Lemonis, ML Retail, and ML, LLC. | Count 10 | Count 6 | None. |
| Conversion—Derivative Claim Against Defendants. | Count 11 | Count 8 | None. |
| Receiver. | Count 12 | Count 11 | None. |
| Temporary, Preliminary, and Permanent Injunction. | Count 13 | Count 12 | None. |
| Dissolution. | Count 14 | Count 13 | Under Del. C. § 18-802; and N.Y. Bus. Corp. Law § 1104-a. |

| | | | |
|---|---|---|---|
| Breach of Contract—Direct Claim by Plaintiff Menkin Against ML Fashion and MLG Retail. | Count 15 | N/A | Not alleged in NY. |
| RICO § 1962—Derivative Claim Against Lemonis, ML Retail, ML, LLC, and Machete. | N/A | Count 9 | Not alleged in DE. |
| Accounting. | N/A | Count 10 | Not overtly alleged in DE. |

**Appendix 2:**
**Common Allegations in the Delaware and New York Lawsuits**

| Common Allegations | DE | NY |
|---|---|---|
| Lemonis claims to help small businesses, but actually "prey[s]" on them and forces them to take on more debt in order to "foreclose" on them and take their assets | ¶ 2 | ¶¶ 2-3, 13 |
| Lemonis exercised complete dominion and control over ML Retail and Marcus Lemonis, LLC | ¶¶ 25-28 | ¶¶ 23-26 |
| Plaintiffs owned and operated the "Courage.B" brand through a corporation, Gooberry | ¶¶ 3-4, 36-37 | ¶¶ 4-5, 31-32 |
| "Courage.B" was founded by Plaintiffs' mother and her husband in 1987 and had a loyal customer base, many of whom lived in Greenwich, Connecticut, visited family in New York City, wintered in Palm Beach, and summered in Aspen, shopping at each "Courage.B" store along the way. | ¶¶ 38-43 | ¶¶ 33-37 |
| Plaintiffs appeared on "The Profit" TV show in connection with Gooberry/Plaintiffs' "Courage.B" brand, in which Lemonis agreed to invest $800,000 | ¶¶ 3, 5, 44-45, 52, 55 | ¶¶ 6, 46, 52, 60 |
| Overview of marketing for "The Profit" to small businesses, and Goureau discovers "The Profit" by watching an episode of "The Profit" involving a business called "Sweet Pete's" | ¶¶ 46-51 | ¶¶ 38-45 |
| Plaintiffs interacted with Machete Corporation as part of the process of being selected to appear on "The Profit," including a Skype interview with Kim Donnan of Machete | ¶¶ 53-54 | ¶¶ 47-51 |
| Lemonis' discussions with Plaintiffs during filming indicated that their business was doing well, but would not make it if Plaintiffs did not take his investment | ¶¶ 56-60 | ¶¶ 53-56 |
| In connection with Plaintiffs' appearance on "The Profit," Lemonis engaged in expensive store renovations without Plaintiffs' approval | ¶¶ 6-7, 61-63, 68 | ¶¶ 7-8, 56-59, 65 |
| Lemonis gave himself "unbridled control" over the entity on whose behalf Plaintiffs are purportedly suing, *i.e.*, Gooberry in New York and ML Fashion in Delaware (each, the "Derivative Entity") | ¶¶ 9-11 | ¶¶ 9-10 |
| Lemonis took control of Gooberry before his investment deal was finalized | ¶¶ 64-65 | ¶¶ 61-62 |

| **Common Allegations** | DE | NY |
|---|---|---|
| Lemonis claimed that Plaintiffs' mother "is the face of the brand" and that "it's still her eye that I trust," yet brings in "expert executives" from his company Camping World | ¶¶ 66-67 | ¶¶ 62-64 |
| Lemonis and Plaintiffs entered into a Shareholder Agreement for Gooberry that gave ML Retail control over Gooberry | ¶¶ 69-71 | ¶¶ 69-75 |
| Lemonis used IT personnel from another company to change email addresses at Gooberry | ¶¶ 73-74 | ¶¶ 76-77 |
| Lemonis forced Gooberry to: (a) make purchases through a line of credit from Lemonis' entities; (b) purchase Blue Jean Bar; and (c) sell inventory at a loss, all while forcing Gooberry to take inventory that loyal "Courage.B" customers did not like | ¶¶ 75-79 | ¶¶ 78-86 |
| Plaintiffs and Lemonis formed ML Fashion, which is managed and controlled by ML Retail | ¶¶ 82-103 | ¶¶ 89-92 |
| Lemonis transferred Gooberry's assets to MLG Retail, with the exception of Gooberry's "Runway business" | ¶ 104 | ¶¶ 114-115 |
| ML Fashion obtained a line of credit from Marcus Lemonis, LLC | ¶ 106 | ¶ 97 |
| Lemonis forced the Derivative Entity to take on loans from other entities through Credit Agreements and Security Agreements | ¶¶ 12, 105, 107-115 | ¶¶ 11-12, 93-95, 98 |
| Lemonis forced the Derivative Entity to purchase products or brands featured on other episodes of "The Profit" | ¶¶ 117-124, 150-154 | ¶¶ 87-88 |
| Lemonis engaged in misconduct relating to "Inkkas Shoes," including by forcing a "Free Shoe Friday" | ¶¶ 130, 148-149 | ¶¶ 104-106 |
| Lemonis forced Gooberry to purchase Runway and allowed Raffel to make business decisions due to Lemonis' romantic interest in Raffel | ¶¶ 136-140[10] | ¶¶ 99-103 |
| Lemonis improperly forced ML Fashion or Gooberry[11] to acquire Denim & Soul and promote the "MARCUS" brand | ¶¶ 156-161 | ¶¶ 110-112 |

---

[10] The Delaware Complaint refers to ML Fashion purchasing Runway, but also refers in the same paragraph to Gooberry purchasing Runway, in an apparent case of copying and pasting gone awry. *See* Delaware Compl. ¶ 137. Strangely, or tellingly, Plaintiffs did not fix this error in their Amended Complaint in this action.

[11] The Delaware Complaint first states that Gooberry purchased Denim & Soul, but later states that ML Fashion acquired Denim & Soul—another error that Plaintiffs did not fix when amending their

18

| **Common Allegations** | DE | NY |
|---|---|---|
| When Plaintiffs questioned Lemonis, he threatened to fire Plaintiffs' mother | ¶ 165 | ¶ 108 |
| Lemonis then fired Plaintiffs' mother, who was informed of her firing by Giovanni Senafe; moved Goureau to various companies; and ultimately fired Goureau | ¶¶ 166-168 | ¶¶ 107-109 |
| Lemonis abruptly cut Menkin off from the businesses in spring 2020 | ¶ 169 | ¶ 116 |
| Lemonis used the pandemic to take his alleged misconduct "to the next level," including by flying employees around the country to take furniture, fixtures, and equipment from closed stores | ¶¶ 14-15, 172-176, 187-188 | ¶ 14, 116-119 |
| Plaintiffs are entitled to bring derivative claims without making a demand upon the Derivative Entity because such a demand would be futile due to Lemonis' control | ¶¶ 191-201 | ¶¶ 121-132 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC fraudulently induced Plaintiffs to enter into agreements relating to the Derivative Entity | ¶¶ 202-209 | ¶¶ 133-142 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC committed fraud, including with respect to the Derivative Entity's acquisition of other brands and additional debt. | ¶¶ 210-217 | ¶¶ 144-153 |
| Lemonis breached his fiduciary duties by, *inter alia*, "saddling" the Derivative Entity with expensive inventory, reducing its profits, making it reliant on loans from other Lemonis entities, and using it as a vehicle to foreclose on other businesses | ¶¶ 218-221 | ¶¶ 155-157 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC breached the implied covenant of good faith and fair dealing by, *inter alia*, "saddling" the Derivative Entity with expensive inventory, reducing its profits, making it reliant on loans from other Lemonis entities, and using it as a vehicle to foreclose on other businesses | ¶¶ 230-233 | ¶¶ 159-162 |
| Plaintiffs assert their unjust enrichment claim in the alternative and "[s]uch alternative pleading is proper where, as here, Plaintiffs are seeking rescission of the [relevant contract(s)] through their claim for Fraudulent Inducement"; Lemonis, ML Retail, and Marcus Lemonis, LLC were unjustly enriched by, *inter alia*, reducing the Derivative Entity's profits, increasing the debts of the | ¶¶ 249-254 | ¶¶ 164-172 |

---

Complaint. *See* Delaware Compl. ¶¶ 76, 156. Similarly, the New York Complaint first states Gooberry purchased Denim & Soul, but later states that "Gooberry or ML Fashion" acquired Denim & Soul. *See* New York Compl. ¶¶ 86, 110.

| Common Allegations | DE | NY |
|---|---|---|
| Derivative Entity, and taking actions that benefitted ML Retail at the expense of the Derivative Entity | | |
| Lemonis, ML Retail, and Marcus Lemonis, LLC engaged in mismanagement by, *inter alia*, "saddling" the Derivative Entity with expensive inventory, reducing its profits, making it reliant on loans from other Lemonis entities, and closing retail stores | ¶¶ 255-256 | ¶¶ 178-183 |
| Lemonis, ML Retail, and Marcus Lemonis, LLC wasted and converted the assets of the Derivative Entity | ¶¶ 257-271 | ¶¶ 174-176, 185-189 |
| Plaintiffs are entitled to appointment of a receiver, injunctive relief, and dissolution with respect to each Derivative Entity | ¶¶ 272-281 | ¶¶ 226-247 |