# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

ML FASHION, LLC, and ML RETAIL, LLC,

    Plaintiffs,

v.

NOBELLE GL, LLC, STEPHANIE MENKIN, SARIT MAMAN NAGRANI, and NICOLAS GOUREAU,

    Defendants.

Case No. 1:20-cv-05124

Hon. Steven C. Seeger

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED VERIFIED COMPLAINT

# TABLE OF CONTENTS

I.  BACKGROUND ........................................................................................................... 2

II.  ARGUMENT ............................................................................................................... 4

   A.  The Court Lacks Personal Jurisdiction Over Any Defendant ............................... 6

   B.  Venue in This District is Improper ................................................................... 13

   C.  Plaintiffs Failed to State Any Viable Claims .................................................... 14

      1.  Plaintiffs' Federal Statutory Claims Fail, and So Does Federal Question .................... 14

      2.  Plaintiffs Failed to State Any Valid Fraud Claims ......................................... 22

      3.  The Conversion and Fiduciary Breaches Claims Cannot Proceed ................................ 25

      4.  Plaintiffs' Breach of Contract Claim Should Not Proceed ............................................ 27

      5.  Plaintiffs Do Not Plead Valid Aiding and Abetting Claims ........................................ 28

      6.  Plaintiffs' Tortious Interference Allegations Fail to State a Valid Claim...................... 29

III.  CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .................................................................................. 6

*Am. Color Graphics, Inc. v. Brooks Pharmacy, Inc.*,
2007 WL 3202748 (M.D. Fla. Oct. 29, 2007) ........................................................ 12

*AnchorBank, FSB v. Hofer*,
649 F.3d 610 (7th Cir. 2011) .................................................................................. 5

*Ariel Investments, LLC v. Ariel Capital Advisors LLC*,
881 F.3d 520 (7th Cir. 2018) .......................................................................... 10, 11

*Arpac Corp. v. Murray*,
589 N.E.2d 640 (Ill. App. 1992) ............................................................................ 28

*Arriaga v. Wells Fargo Bank, N.A.*,
2011 WL 4738522 (N.D. Ill. Sept. 30, 2011) ........................................................ 24

*Arvegenix, LLC v. Seth*,
2014 WL 1698374 (C.D. Ill. Apr. 29, 2014) .......................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 5, 6, 17

*Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*,
493 F.3d 841 (7th Cir. 2007) .................................................................................. 24

*Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*,
892 F.2d 566 (7th Cir. 1989) .................................................................................. 11

*Atkins v. Hasan*,
2015 WL 3862724 (N.D. Ill. June 22, 2015) ......................................................... 18

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) .................................................................................. 18

*Bankers Tr. Co. v. Old Republic Ins. Co.*,
959 F.2d 677 (7th Cir. 1992) .................................................................................. 6

*be2 LLC v. Ivanov*
642 F.3d 555 (7th Cir. 2011) .................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 5, 17

*Berlin Packaging, LLC v. McBain*,
   2013 WL 170002 (N.D. Ill. Jan. 15, 2013) ........................................... 8

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ......................................................................... 7

*Bower v. Jones*,
   978 F.2d 1004 (7th Cir. 1992) ............................................................ 24

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009)............................................................... 24

*CardioNet, Inc. v. LifeWatch Corp.*,
   2008 WL 567031 (N.D. Ill. Feb. 27, 2008).................................... 16, 27

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
   2009 WL 1703015 (N.D. Ill. June 18, 2009) ................................... 17, 18

*Cenco Inc. v. Seidman & Seidman*,
   686 F.2d 449 (7th Cir. 1982)............................................................... 28

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
   230 F.3d 934 (7th Cir. 2000)................................................................. 8

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
   2017 WL 4269005 (N.D. Ill. Sept. 26, 2017)....................................... 19

*Chancellor v. Lawrence*,
   501 F. Supp. 997 (N.D. Ill. 1980) ......................................................... 6

*CMBB LLC v. Lockwood Mfg., Inc.*,
   628 F. Supp. 2d 881 (N.D. Ill. 2009) ................................................... 20

*Contrak, Inc. v. Paramount Enterprises Int'l, Inc.*,
   201 F. Supp. 2d 846 (N.D. Ill. 2002) ............................................... 9, 11

*Cornielsen v. Infinium Capital Mgmt., LLC*,
   916 F.3d 589 (7th Cir. 2019)............................................................... 23

*Cross v. Batterson*,
   2017 WL 2798398 (N.D. Ill. June 28, 2017) ....................................... 24

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ............................................................................ 7, 10

*Deckers Outdoor Corp. v. J.C. Penney Co. Inc.,*
   45 F. Supp. 3d 1186 (C.D. Cal. 2014) .................................................... 15

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.,*
   616 F. Supp. 2d 805 (N.D. Ill. 2009) ...................................................... 18

*Delaware Exp. Shuttle, Inc. v. Older,*
   2002 WL 31458243 (Del. Ch. Oct. 23, 2002) .......................................... 28

*Desmond v. Chi. Boxed Beef Distribs.,*
   921 F. Supp. 2d 884 (N.D. Ill. 2013) ...................................................... 16

*Desnick v. Am. Broad. Companies, Inc.,*
   44 F.3d 1345 (7th Cir. 1995) .................................................................. 24

*DiLeo v. Ernst & Young,*
   901 F.2d 624 (7th Cir. 1990) ............................................................. 22, 24

*E.R. James Real Estate Servs., LLC v. Spinell,*
   2011 WL 5078873 (N.D. Ill. Oct. 26, 2011) ............................................ 17

*Epic Ins. Co. v. Nat'l Hosp. & Health Care Servs., Inc.,*
   1994 WL 559103 (N.D. Ill. Oct. 6, 1994) ................................................ 29

*Feeley v. NHAOCG, Ltd. Liab. Co.,*
   62 A.3d 649 (Del. Ch. Ct. 2012) ............................................................. 25

*Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.,*
   799 F. Supp. 2d 846 (N.D. Ill. 2011) ...................................................... 19

*FMC Corp. v. Capital Cities/ABC, Inc.,*
   915 F.2d 300 (7th Cir. 1990) .................................................................. 27

*Ford-Reyes v. Progressive Funeral Home,*
   418 F. Supp. 3d 286 (N.D. Ill. 2019) .................................................. 13, 14

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.,*
   763 F.3d 702 (7th Cir. 2014) .............................................................. 16, 17

*G2 Enterprises, LLC v. Nee,*
   2006 WL 1647518 (N.D. Ill. June 7, 2006) ............................................. 12

*Gale v. Bershad,*
    1998 WL 118022 (Del. Ch. Mar. 4, 1998) ........................................................................... 26

*Garelli Wong & Assoc., Inc. v. Nichols,*
    551 F.Supp.2d 704 (N.D.Ill.2008) ................................................................................. 17

*Gas Oil Prod., Inc. of Delaware v. Kabino,*
    1987 WL 18432 (Del. Ch. Oct. 13, 1987) ....................................................................... 28

*GCIU-Employer Ret. Fund v. Goldfarb Corp.*
    565 F.3d 1018, 1020 n.1 (7th Cir. 2009) ........................................................................... 4

*GE v. Uptake Techs., Inc.,*
    394 F. Supp. 3d 815 (N.D. Ill. 2019) ............................................................................. 19

*George A. Fuller Co., a Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.,*
    719 F.2d 1326 (7th Cir. 1983) .............................................................................. 29, 30

*Gibson v. City of Chicago,*
    910 F.2d 1510 (7th Cir. 1990) ......................................................................................... 5

*GK Skaggs, Inc. v. Hartford Cas. Ins. Co.,*
    579 F. App'x 542 (9th Cir. 2014) ................................................................................... 15

*Glaser v. Wound Care Consultants, Inc.,*
    570 F.3d 907 (7th Cir. 2009) ......................................................................................... 22

*Guaranteed Rate, Inc. v. Conn,*
    264 F. Supp. 3d 909 (N.D. Ill. 2017) ................................................................... 7, 8, 12

*Hancock v. Sotheby's,*
    2018 WL 6696071 (N.D. Ill. Dec. 20, 2018) ................................................................. 27

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ......................................................................................................... 5

*Hart v. Amazon.com, Inc.,*
    191 F. Supp. 3d 817 (N.D. Ill. 2016) ............................................................................. 16

*Hecny Tramp., Inc. v. Chu,*
    430 F.3d 402 (7th Cir.2005) ........................................................................................... 27

*Heritage Vintage Investments, LLC v. KMO Dev. Grp., Inc.,*
    2015 WL 12838162 (N.D. Ill. Dec. 11, 2015) ................................................................. 7

*Hydrogen Master Rights, Ltd. v. Weston*,
    228 F.Supp.3d 320 (D. Del. 2017) ........................................................................ 21

*Imbert v. LCM Interest Holding LLC*,
    2013 WL 1934563 (Del. Ch. May 7, 2013) .......................................................... 25

*In re Teknek, LLC*,
    512 F.3d 342 (7th Cir. 2007) .................................................................................. 8

*Indus. Hard Chrome, Ltd. v. Hetran, Inc.*,
    90 F. Supp. 2d 952 (N.D. Ill. 2000) ..................................................................... 27

*Int'l Airport Centers, L.L.C. v. Citrin*,
    440 F.3d 418 (7th Cir. 2006) ................................................................................ 18

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ................................................................................................ 4

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*,
    2019 WL 2773650 (N.D. Ill. July 2, 2019) ............................................................ 7

*J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*,
    965 F.3d 571 (7th Cir. 2020) .................................................................................. 7

*James Burrough, Ltd. v. Sign of Beefeater, Inc.*,
    540 F.2d 266 (7th Cir. 1976) ................................................................................ 16

*John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*,
    2017 WL 1093150, (N.D. Ill. Mar. 23, 2017) .................................................. 9, 10

*John Crane, Inc. v. Shein Law Ctr., Ltd.*,,
    891 F.3d 692 (7th Cir. 2018) .................................................................................. 9

*Johnson v. Barrier*,
    2017 WL 36442 (N.D. Ill. Jan. 4, 2017) .............................................................. 10

*Jones v. Barber*,
    2020 WL 1433811 (N.D. Ill. 2020) ........................................................................ 5

*JustMed, Inc. v. Byce*,
    600 F.3d 1118 (9th Cir. 2010) .............................................................................. 21

*Kennedy v. Nat'l Juvenile Det. Ass'n*,
    187 F.3d 690 (7th Cir. 1999) ................................................................................ 15

*Kipp v. Ski Enter. Corp. of Wisconsin*
783 F.3d 695 (7th Cir. 2015) .......................................................................... 4

*Kroto Inc. v. Chapa,*
2017 WL 2692122 (N.D. Ill. June 22, 2017) ................................................. 13

*Kuroda v. SPJS Holdings, L.L.C.,*
971 A.2d 872 (Del. Ch. 2009) ...................................................................... 29

*Lansing v. Carroll,*
2012 WL 4759241 (N.D. Ill. Oct. 5, 2012) ................................................... 26

*Lifesize, Inc. v. Chimene,*
2017 WL 1532609 (W.D. Tex. Apr. 26, 2017) .......................................... 21, 27

*Livingston v. Hoffmann-La Roche Inc.*
293 F. Supp. 3d 760 (N.D. Ill. 2018) ........................................................... 4, 7

*LoggerHead Tools, LLC v. Sears Holding Corp.,*
2013 WL 1858590 (N.D. Ill. 2013) ............................................................... 22

*Martin v. Wendy's Int'l, Inc.,*
183 F. Supp. 3d 925 (N.D. Ill. 2016) ............................................................ 15

*McGowan v. Johnson,*
2002 WL 1396956, (N.D. Ill. June 26, 2002) ................................................. 7

*Meadoworks, LLC v. Linear Mold & Eng'g, LLC,*
2020 WL 5365977 (N.D. Ill. Sept. 8, 2020) .................................................. 26

*Merrill Lynch Bus. Fin. Servs., Inc. v. Gray Supply Co.,*
1991 WL 127610 (N.D. Ill. July 9, 1991) .................................................. 23, 28

*Midamines SPRL Ltd. v. KBC Bank N.V.*
2018 WL 439211 (N.D. Ill. 2018) ................................................................... 4

*Mkt. Am., Inc. v. Google, Inc.,*
2010 WL 3156044 (D. Del. Aug. 9, 2010) ..................................................... 25

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.,*
623 F.3d 440 (7th Cir. 2010) .......................................................................... 4

*Monco v. Zoltek Corp.,*
2019 WL 952138 (N.D. Ill. Feb. 27, 2019) ................................................... 12

*Montel Aetnastak, Inc. v. Miessen,*
998 F. Supp. 2d 694 (N.D. Ill. 2014) ........................................................................ 28

*Montgomery v. Aetna Plywood, Inc.,*
231 F.3d 399 (7th Cir. 2000)..................................................................................... 28

*Nagel v. ADM Investor Servs.,*
995 F. Supp. 837 (N.D. Ill. 1998) ............................................................................... 5

*Native Am. Arts, Inc. v. Contract Specialties, Inc.,*
2010 WL 658864, (N.D. Ill. Feb. 18, 2010)................................................................. 8

*NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.,*
2020 WL 2836778 (N.D. Ill. May 31, 2020) .............................................................. 18

*Nicholas J. Murlas Living Trust v. Mobil Oil Corp.,*
1994 WL 130778 (N.D. Ill. Apr. 13, 1994) ............................................................... 28

*Noboa v. Barcelo Corporacion Empresarial*, SA,
812 F.3d 571 (7th Cir. 2016)....................................................................................... 8

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC,*
2018 WL 1156246 (N.D. Ill. Mar. 5, 2018) ........................................................ 17, 19

*Packaging Corp. of Am., Inc. v. Croner,*
419 F. Supp. 3d 1059 (N.D. Ill. 2020) ..................................................... 18, 20, 22

*Patriot Resource Partners II, LLC v. Service Disabled Veterans Business Assocs., Inc.,*
2008 WL 4534017 (N.D. Ill. Oct. 3, 2008) .............................................................. 12

*Payne v. Bucket Sols., LLC,*
2013 WL 5946690 (N.D. Ind. Nov. 6, 2013) ............................................................ 10

*Peco Pallet, Inc. v. Nw. Pallet Supply Co.,*
2016 WL 5405107 (N.D. Ill. Sept. 28, 2016)............................................................ 30

*Petropoulos v. City of Chicago,*
448 F. Supp. 3d 835 (N.D. Ill. 2020) ....................................................................... 22

*Phx. Entm't, LLC v. Rumsey,*
829 F.3d 822 (7th Cir. 2016)..................................................................................... 16

*Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte. Ltd.,*
804 F. Supp. 2d 730 (N.D. Ill. 2011) ....................................................................... 12

*Primack v. Pearl B. Polto, Inc.*,
    649 F. Supp. 2d 884 (N.D. Ill. 2009) ............................................................. 8

*Prominence Advisors, Inc. v. Dalton*,
    2017 WL 6988661 (N.D. Ill. Dec. 18, 2017) ............................................ 21, 22

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*
    338 F.3d 773 (7th Cir. 2003) ....................................................................... 4

*Rao v. Rao*,
    718 F.2d 219 (7th Cir. 1983) ...................................................................... 29

*RAR, Inc. v. Turner Diesel, Ltd.*,
    107 F.3d 1272 (7th Cir. 1997) ..................................................................... 11

*Reger Dev., LLC v. Nat'l City Bank*,
    592 F.3d 759 (7th Cir. 2010) ...................................................................... 23

*Ruebe v. PartnerRe Ireland Ins. DAC*,
    470 F. Supp. 3d 829 (N.D. Ill. 2020) ......................................................... 27

*Russell v. SNFA*,
    987 N.E.2d 778 (Ill. 2013) ........................................................................... 7

*Sam's Wines & Liquors, Inc. v. Hartig*,
    2008 WL 4394962 (N.D. Ill. Sept. 24, 2008) ............................................. 17

*Sangston v. Ridge Country Club*,
    35 F.3d 568 (7th Cir. 1994) ........................................................................ 29

*SB Designs v. Reebok Int'l, Ltd.*,
    338 F. Supp. 2d 914 (N.D. Ill. 2004) ......................................................... 16

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe Gmbh*,
    2015 WL 4162599 (N.D. Tex. July 9, 2015) ............................................... 12

*Shanghai Daisy, LLC v. PositivEnergy, Inc.*,
    2020 WL 4365883 (N.D. Ill. July 30, 2020) ........................................... 10, 12

*Smith v. Prime Cable of Chicago*,
    658 N.E.2d 1325 (Ill. App. 1995) ............................................................... 24

*StunFence, Inc. v. Gallagher Sec. (USA), Inc.*,
    2002 WL 31109456 (N.D. Ill. Sept. 20, 2002) ........................................... 24

*Sullivan v. Cox,*
   78 F.3d 322 (7th Cir. 1996) ........................................................................... 12

*Telebrands Corp. v. My Pillow, Inc.,*
   2019 WL 1923410 (N.D. Ill. Apr. 30, 2019) ................................................. 15

*Tenneco Auto., Inc. v. El Paso Corp.,*
   2007 WL 92621 (Del. Ch. Jan. 8, 2007) ....................................................... 29

*Ticketreserve, Inc. v. viagogo, Inc.,*
   656 F. Supp. 2d 775 (N.D. Ill. 2009) .......................................................... 7, 9

*TopstepTrader, LLC v. OneUp Trader, LLC,*
   2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) ................................................. 24

*Trek Bicycle Corp. v. Trek Winery, LLC,*
   2010 WL 744252 (W.D. Wis. Mar. 2, 2010) ................................................. 12

*U.S. ex rel. Gross v. AIDS Research All.-Chicago,*
   415 F.3d 601 (7th Cir. 2005) ........................................................................ 23

*Uni\*Quality, Inc. v. Infotronx, Inc.,*
   974 F.2d 918 (7th Cir. 1992) .............................................................. 6, 22, 24

*Unidex Grp., Inc. v. ECSI Int'l, Inc.,*
   2010 WL 502744 (N.D. Ill. Feb. 9, 2010) .................................................... 13

*United States ex rel. Fowler v. Caremark RX, L.L.C.,*
   496 F.3d 730 (7th Cir. 2007) ........................................................................ 22

*United States ex rel. McGinnis v. OSF Healthcare Sys.,*
   2014 WL 2960344 (C.D. Ill. July 1, 2014) ................................................... 24

*Veal v. First Am. Sav. Bank,*
   914 F.2d 909 (7th Cir. 1990) ........................................................................ 23

*Veloric v. J.G. Wentworth, Inc.,*
   2014 WL 4639217 (Del. Ch. Sept. 18, 2014) ............................................... 26

*Vicom, Inc. v. Harbridge Merch. Servs.,*
   20 F.3d 771 (7th Cir. 1994) .................................................................... 22, 23

*Villa v. Brady Pub.,*
   2002 WL 1400345 (N.D. Ill. June 27, 2002) ................................................ 16

*Want2Scrap, LLC v. Larsen*,
  2018 WL 1762853 (N.D. Ind. Apr. 9, 2018)..................................................... 14

*Webb v. Frawley*,
  906 F.3d 569 (7th Cir. 2018)..................................................................... 30

*Wenske v. Blue Bell Creameries, Inc.*,
  2018 WL 3337531 (Del. Ch. July 6, 2018)..................................................... 29

*West v. Access Control Related Enterprises, LLC*,
  2019 WL 2385863 (Del. Super. Ct. June 5, 2019)........................................... 26

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012)..................................................................... 26

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................................ 5

*Young v. Colgate-Palmolive Co.*,
  790 F.2d 567 (7th Cir. 1986)..................................................................... 6

*Zachman v. Vohra*,
  2015 WL 7423783 (N.D. Ill. Nov. 23, 2015)........................................ 28, 29, 30

**Statutes**

18 U.S.C. § 1836.......................................................................... 18, 19, 21

18 U.S.C. § 1839(3).............................................................................. 19

28 U.S.C. § 1391.................................................................................. 13

735 Ill. Comp. Stat. Ann. 5/2-209............................................................. 4

**Rules**

Fed. R. Civ. Pro. 12............................................................................ 4, 5

Fed. R. Civ. Pro. 8........................................................................... passim

Fed. R. Civ. Pro. 9(b)....................................................................... passim

This action still does not belong in Illinois.[1]  Plaintiffs have already all but conceded as much when they announced that they filed this action despite the first-filed and substantially similar litigation currently pending in Delaware because, according to them, only this Court can remedy the harm Plaintiffs purportedly suffered in Illinois.  In other words, aside from the fortuity of Plaintiffs' Illinois citizenship, there is no other link to Illinois, as is further confirmed by Defendants' sworn evidence demonstrating that they have never purposefully availed themselves of the forum.  Although Plaintiffs have now substantially revised their initial complaint, none of the new allegations affects this inescapable conclusion, which alone is sufficient to dismiss Plaintiffs' Amended Verified Complaint ("FAC").

Even if the Court finds that it can properly exercise jurisdiction over the Defendants in this District, the Court should abstain in favor of the substantially similar first-filed litigation, which is already proceeding at full speed in a Delaware state court.  As demonstrated in Defendants' concurrently filed motion to abstain, all the relevant factors counsel in favor of abstention under the *Colorado River* doctrine.  Finally, if the Court chooses to consider the asserted claims, they should be dismissed for the reasons set forth below.  Indeed, Plaintiffs' Lanham Act claims lack any cognizable basis and fail the heightened pleading standard of Rule 9—along with Plaintiffs' fraud claim, which lacks any specifics, let alone particularized ones.  The remaining claims, *inter alia*, rest on nonexistent fiduciary duties, are not cognizable under applicable law or impermissibly duplicate each other.  As such, the FAC should be dismissed in its entirety.

---

[1]     All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted.  All "Ex." references are to the documents attached to Plaintiffs' Amended Complaint.

## I.  BACKGROUND

Plaintiffs ML Fashion, LLC ("ML Fashion") and ML Retail, LLC ("ML Retail") bring this entirely duplicative action against Defendants Stephanie Menkin ("Menkin"), Nicolas Goureau ("Goureau"), Sarit Maman Nagrani ("Nagrani") and Nobelle GW LLC ("Nobelle"), while fully acknowledging that the same issues are already being litigated as part of the first-filed action in Delaware state court, initiated more than two months before Plaintiffs filed their Complaint here. (FAC ¶ 76.)   As Plaintiffs have incorporated by reference the Delaware complaint (*id.*) and submitted it as part of the docket here (Dkt. 14 at Ex. 3 ("Del. Compl.")), it is appropriate to refer to it for the full background.  To summarize briefly, Marcus Lemonis ("Lemonis"), who controls both Plaintiffs, through his television show, "The Profit," presents himself as a savior to struggling small business owners while preying on the business he purports to be saving.  (Del. Compl. ¶ 2.) Lemonis strategically drowns businesses in debt in order to foreclose on them and take their assets and intellectual property to expand his own empire.  (*Id.*)

Unlike Lemonis' other victims, Courage.B, the family business run by Defendants Goureau and Menkin, along with their mother, was successful.  They went on the show looking for growth and ended up in Lemonis' trap instead.  (*Id.* ¶¶ 3-7.)  Lemonis purchased a stake in their business through ML Retail and then convinced them to start a new entity with him, ML Fashion, to collectively invest in various brands and stores.  (*Id.* ¶¶ 8-10.)  Although both Menkin and Goureau are members of ML Fashion, and Menkin also its President, neither manage ML Fashion, since Lemonis was sure to give himself unbridled control through exclusive management rights.  (*Id.* ¶¶ 89-102; *accord* FAC ¶ 24.)  He used those rights to foist unnecessary debts onto ML Fashion in order to force ML Fashion to obtain loans from Lemonis' other controlled entities to meet its obligations, eventually driving it to the brink of insolvency.   (Del. Compl. ¶¶ 107-165.) Eventually, Lemonis iced out Goureau and Menkin from the business, and they began discussing

separation strategy in December 2019. (*Id.* ¶¶ 166-169.) The separation eventually culminated in litigation, which Menkin and Goureau initiated in Delaware state court on June 18, 2020, subsequently amending their complaint on August 24, 2020. (FAC ¶ 76; *see also generally* Del. Compl.) More than two months after Menkin and Goureau filed their Delaware complaint dealing with, *inter alia*, the rights and obligations arising from the March 29, 2016 limited liability company agreement for ML Fashion ("LLC Agreement" (Ex. 1)) and accusing Plaintiffs of stealing funds and inventory, including inventory in Illinois, Plaintiffs retaliated by initiating the action at bar, which asserts similar claims against Defendants. Moreover, since Menkin, along with Nagrani, opened Nobelle in Connecticut in August 2020, Plaintiffs roped both Nagrani and Nobelle as defendants here as well.

While Plaintiffs set forth allegations accusing Menkin and Goureau of using company money for personal purposes (FAC ¶¶ 63-64), none of their claims is actually based on these allegations, other than their fraud claims that purport to impose liability for Menkin and Goureau's undefined promises not to do so. As such, Plaintiffs' claims only focus on the purported misappropriation of inventory and breach of the one-sided non-compete clause in the LLC Agreement (*id.* ¶¶ 79-85). While Plaintiffs also trot out two of their own ancillary contracts, the Credit Agreement and the Security Agreement (*id.* ¶¶ 87-89 & Exs. 2 & 3), none of the claims actually arises therefrom, other than Plaintiffs' claim for tortious interference. As shown below and explained further in Defendants' sworn affidavits,[2] none of the conduct at issue actually took place in Illinois, and none of the Defendants has formed a sufficient jurisdictional nexus with Illinois, let alone the required substantial connection.

---

[2]     *See* Affidavit of Stephanie Menkin ("Menkin Aff."), Affidavit of Sarit Maman Nagrani ("Nagrani Aff."), and Affidavit of Nicolas Goureau ("Goureau Aff."), submitted concurrently herewith.

## II. ARGUMENT

**Rule 12(b)(2) Standard.** "Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015). While well-pleaded facts of a complaint are accepted as true, the Court must also regard as true "[a]ny facts contained in the defendant's affidavits that remain unrefuted by the plaintiff[.]'" *Midamines SPRL Ltd. v. KBC Bank N.V.*, 2018 WL 439211, at *4 (N.D. Ill. 2018), quoting *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). "A federal court in Illinois has jurisdiction over a plaintiff's state law claims if an Illinois court would have jurisdiction." *Livingston v. Hoffmann-La Roche Inc.*, 293 F. Supp. 3d 760, 766 (N.D. Ill. 2018); *accord be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011). The exercise of personal jurisdiction over a non-resident defendant requires a "two step-inquiry:" whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003).

Illinois' long-arm statute (codified at 735 Ill. Comp. Stat. Ann. 5/2-209 permits the exercise of personal jurisdiction "up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp*, 783 F.3d at 697. As a result, the Illinois and federal due process inquiry collapses into one question: whether jurisdiction comports with due process. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). "The Due Process Clause authorizes personal jurisdiction over out of state defendants when the defendants have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kipp*, 783 F.3d at 697, citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws."[3]

**Rule 12(b)(3) Standard.** Plaintiff also bears the burden of establishing proper venue. *See Nagel v. ADM Investor Servs.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). On a motion to dismiss for improper venue under Rule 12(b)(3), "a court takes all allegations in the complaint as true, unless contradicted by the defendant's affidavits" but the "court may also examine facts outside the complaint in order to determine whether venue is proper." *Id.*

**Rule 12(b)(6) Standard.** "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case." *Jones v. Barber*, 2020 WL 1433811, at *2 (N.D. Ill. 2020) (Seeger, J.), citing, *inter alia*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a Rule 12(b)(6) motion, "the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor." *Jones*, 2020 WL 1433811, at *2, citing *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation…." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks

---

[3]     *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (authorizing exercise of jurisdiction where "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").

for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

As the complaint here asserts a fraud claim, it is also subject to the heightened pleading standards set forth in Federal Rule of Civil Procedure 9(b). *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." The Seventh Circuit has held that Rule 9(b) "require[s] the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc.*, 974 F.2d at 923, quoting *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). "In other words, the plaintiff must plead the 'who, what, when, and where' of the alleged fraud. *Uni\*Quality, Inc.*, 974 F.2d at 923.

### A. The Court Lacks Personal Jurisdiction Over Any Defendant

"[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the ***defendant***'s conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."[4] Yet here, it ***is*** Plaintiffs' domicile that is effectively the only alleged link to Illinois.[5] Indeed, when the dust settles, and Defendants' sworn affidavits are taken into consideration, Plaintiffs are left with nothing more than the fortuitous residence of Lemonis to uphold their jurisdictional house of cards—and, as a matter of law, it does not.[6]

---

[4]     *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *accord Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (observing that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative.").

[5]     Although not expressly alleged in the Complaint, since Lemonis is an Illinois citizen, his membership in both Plaintiffs, both limited liability companies, makes them Illinois citizens.

[6]     *See Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 572 (7th Cir. 1986) (rejecting "fortuitous presence or residence of the plaintiff" as an insufficient basis for jurisdiction); *Chancellor v. Lawrence*, 501 F. Supp. 997, 1001 (N.D. Ill. 1980) (refusing to treat "the fact that plaintiff was an Illinois resident as anything but a mere fortuity" insufficient to confer jurisdiction).

A court may exercise personal jurisdiction over a nonresident defendant generally or specifically. *See Daimler AG v. Bauman*, 571 U.S. 117, 126-28 (2014). Specific jurisdiction exists when the cause of action arises out of the defendant's activities within the forum. *See id.* at 127. Alternatively, a court has general jurisdiction when the defendant's activities within a state are so "substantial, continuous and systematic" as to render him "essentially at home in the forum State." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). Neither type of jurisdiction provides any basis for the Court to exercise personal jurisdiction over Defendants.

**<u>Lack of General Jurisdiction.</u>** As an initial matter, despite Plaintiffs' conclusory assertions to the contrary, the evidence shows that Defendants lack the requisite "continuous and systematic" contacts with Illinois to support general jurisdiction.[7] Here, Plaintiffs do not even allege any Defendant resides or operates within Illinois—in fact, each Defendant is alleged to be "at home" elsewhere (FAC ¶¶ 6, 7-8 & 9). As there are also no allegations purporting to establish Defendants' "permanent and systemic business activity in Illinois"—nor could there plausibly be any, given Defendants' affidavits denying such activities, this Court cannot exercise general jurisdiction over any of them. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 2019 WL 2773650, at *2 (N.D. Ill. July 2, 2019), citing *Russell v. SNFA*, 987 N.E.2d 778, 787 (Ill. 2013).[8]

---

[7]     *See Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 914-15 (N.D. Ill. 2017) (rejecting general jurisdiction under the "demanding" standard set by the Supreme Court even where defendant did some business in Illinois yet was "at home" elsewhere). *See also Livingston*, 293 F. Supp. 3d at 766 (rejecting general jurisdiction where there was "no allegation that the Roche Defendants are so 'heavily engaged in activity' in Illinois so as to render them 'essentially at home' in the state"), citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017); *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (dismissing complaint for lack of personal jurisdiction where defendant's affidavit accompanying motion to dismiss established lack of sufficient contacts with the forum).

[8]     Notably, Goureau's former temporary Illinois residence is irrelevant for jurisdictional purposes, especially given that he moved out to Florida long before the events alleged in the FAC. *See McGowan v. Johnson*, 2002 WL 1396956, at *2 (N.D. Ill. June 26, 2002). Indeed, he retained his permanent residence in New York throughout his sojourn in Illinois. (Goureau Aff. ¶ 6). Similarly, Menkin's occasional visits to Illinois prior to February 2020 in her capacity as ML Fashion's President are insufficient to support general jurisdiction. *See, e.g., Heritage Vintage Investments, LLC v. KMO Dev. Grp., Inc.*, 2015 WL 12838162, at *3 (N.D. Ill. Dec. 11, 2015) (even "regular[]" travel to Illinois in corporate capacity is not "substantial enough to render [defendant] at home in Illinois such that he—in his individual capacity—

**Lack of Specific Jurisdiction.** In turn, for this Court to exercise specific jurisdiction, "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice."[9] Plaintiffs bear the burden of establishing both of the first two prongs.[10] Plaintiffs' complaint here fails to do so.

**No Purposeful Availment.** For purposeful availment, what is critical is "[t]he relation between the defendant and the forum . . . that the ***defendant himself*** creates with the forum State.'" *Guaranteed Rate*, 264 F. Supp. 3d at 919. Thus, "the pertinent question is whether the defendant has links to the jurisdiction in which the suit was filed, not whether the plaintiff has such links— or whether the loss flowed through a causal chain from the plaintiff's contacts with the jurisdiction of suit." *Noboa v. Barcelo Corporacion Empresarial*, SA, 812 F.3d 571, 572 (7th Cir. 2016). "Only intentional contacts by the defendant with the forum jurisdiction can support specific jurisdiction." *Id.* In particular, "[f]orum-state injury" is not enough for purposeful availment, and "[b]ad financial consequences to a firm in Illinois ... are not the same as a tortious injury occurring to the firm in Illinois." *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, 2017 WL

---

should expect to be sued in Illinois on *any* matter" (original emphasis); *cf. In re Teknek, LLC*, 512 F.3d 342, 345 (7th Cir. 2007) (under the fiduciary-shield doctrine, "a person who enters a jurisdiction only as an agent does not submit to suit in a personal capacity"). Although she visited and oversaw Illinois stores in the course of her work, she did the same with ML Fashion stores across the country; indeed, her work had no particular focus on Illinois, nor did the Illinois stores consume more of her time than other locations. (Menkin Aff. ¶¶ 12-13.) In fact, considering the seven locations in New York and the fact that the company has its principle place of business there, Menkin always regarded the business as a New York-focused enterprise. (*Id.* ¶ 14.) Finally, Nagrani testifies that she only visited Illinois on one occasion, for a management summit and that she only visited two store locations while in the state. (Nagrani Aff. ¶ 14.) This is plainly insufficient to establish any permanence in Illinois.

[9] *Berlin Packaging, LLC v. McBain*, 2013 WL 170002, at *2 (N.D. Ill. Jan. 15, 2013); *accord Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).
[10] *See Native Am. Arts, Inc. v. Contract Specialties, Inc.*, 2010 WL 658864, at *3 (N.D. Ill. Feb. 18, 2010); *Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884, 889 (N.D. Ill. 2009).

1093150, at *11 (N.D. Ill. Mar. 23, 2017), *aff'd sub nom. John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692 (7th Cir. 2018).

Here, the evidence demonstrates that ML Fashion is a New York-centric company, headquartered in New York with seven stores in the state, and that no defendant had any intention of targeting Illinois specifically: indeed, ML Fashion's Illinois presence was driven only by Marcus Lemonis himself.[11] Other than attempting to present the picture of the business as Illinois-centric, Plaintiffs' only allegations that try to connect the claims asserted to this jurisdiction are that: (1) Defendants purportedly seized inventory from ML Fashion store locations in Illinois for use in Connecticut "[i]n or about August 2020" (FAC ¶¶ 80-81)—which they necessarily must have done, if at all, without ever travelling to Illinois, since they attest that neither of them has done so in the relevant time period;[12] and (2) Lemonis signed the Security and Credit Agreements in Illinois, and these contracts contain Illinois forum selection clauses (*id.* ¶ 87).

These allegations are woefully insufficient to carry Plaintiffs' burden of establishing purposeful availment. *First*, Plaintiffs' allegations of tortious conduct as the basis for purported jurisdiction necessarily triggers the "effects" test, since none of the Defendants has actually entered Illinois. Under that test, the proper question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Shanghai Daisy, LLC v. PositivEnergy, Inc*., 2020 WL 4365883, at *6 (N.D. Ill. July 30,

---

[11] *See* Menkin Aff. ¶¶ 5-6, 10-14, Nagrani Aff. ¶¶ 5-6, 10-19, and Goureau Aff. ¶¶ 5, 7, 11-14. *See also Ticketreserve,* 656 F. Supp. 2d at 783 (granting motion to dismiss for lack of jurisdiction where defendant submitted sworn evidence denying involvement in the conduct that was purportedly aimed at Illinois); *Contrak, Inc. v. Paramount Enterprises Int'l, Inc*., 201 F. Supp. 2d 846, 851 (N.D. Ill. 2002) (accepting uncontradicted evidence in defendants' affidavits as the basis for denying motion to dismiss for lack of jurisdiction). Notably, despite cataloguing ML Fashion's ten locations in Illinois (FAC ¶ 49), Plaintiffs concede that the company operates more than 30 other retail stores across the country (*id.* ¶ 50). Indeed, there are seven such locations in New York state alone. (Menkin Aff. ¶ 14.)

[12] Notably, Plaintiffs' allegations are internally contradictory as to Goureau's actions: Plaintiffs first allege that he is not among the defendants who purportedly removed inventory from Illinois ML Fashion stores (FAC ¶ 80) but subsequently accuse him, alongside Menkin, of having done so (*id.* ¶ 82).

2020), citing *Walden*, 571 U.S. at 290. And those contacts must be "with the forum State itself, not … with persons who reside there." *Id.* at 285. As such, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

In other words, just because Plaintiffs were supposedly injured in Illinois does not make Defendants susceptible to jurisdiction here. *See, e.g., John Crane Inc.*, 2017 WL 1093150, at *11 (observing that "[f]orum-state injury is not enough" for purposeful availment). Rather, Plaintiffs must show "something more"—specifically, that Defendants expressly aimed their conduct at Illinois, aside from Plaintiffs' happening to reside here—and it must be the kind of express aiming that creates "a substantial connection with the forum State … [that] must be of the ***defendant***'s creation, not of the plaintiff's."[13] As the evidence shows here, no such express aiming creating a "substantial connection" with Illinois exists.[14]

To the extent that Plaintiffs assert Defendants' alleged tortious interference with certain of Plaintiffs' contracts that contain Illinois forum selection clauses, this argument, as shown below, puts the proverbial cart before the horse—Plaintiffs have to first show that Defendants agreed to those contractual choices and then prove that the scope of those choices includes the asserted

---

[13]      *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018); *see also Johnson v. Barrier*, 2017 WL 36442, at *3 (N.D. Ill. Jan. 4, 2017) (granting motion to dismiss where plaintiff failed to show "express aiming, apart from his own residence. The fact that Johnson suffered an 'injury' in Illinois … does not bear on whether [defendant]'s 'conduct connects [it] to the forum in a meaningful way.'"). *Cf. Payne v. Bucket Sols., LLC*, 2013 WL 5946690, at *4 (N.D. Ind. Nov. 6, 2013) (granting motion to dismiss: "The Plaintiff has alleged that the Defendant engaged in intentional torts, and that it knew the injury would be suffered by an Indiana resident. These allegations, and the facts supporting the Defendant's knowledge of the Plaintiff's business … [lack] "something more" than an injury in the forum to support personal jurisdiction: the plaintiff must also establish 'tortious conduct *specifically directed* at the forum, making the forum the focal point of the tort.'") (original emphasis).

[14]      Indeed, contrary to Plaintiffs' allegations, the only party that was focused on Illinois was Lemonis himself, as Defendants' intention at the outset was to open stores across the country. (Menkin Aff. ¶¶ 10-12; Goureau Aff. ¶¶ 11-13) Furthermore, Defendants did not scout store locations in Illinois and never reviewed leases for any of them. (Menkin Aff. ¶¶ 12; Goureau Aff. ¶¶ 13). Rather, it was Lemonis himself who chose the location of each Illinois store and determined the nature of their operations. (Menkin Aff. ¶¶ 11, 12; Goureau Aff. ¶¶ 12, 13.) By contrast, when it came to other states, including store locations and their operations, Menkin was actually involved (and neither Goureau nor Nagrani actually participated in running the business). (Menkin Aff. ¶¶ 12; Goureau Aff. ¶¶ 16; Nagrani Aff. ¶¶ 2, 6.)

claims. But if Plaintiffs contend that because of those forum selection clauses, Defendants should

have ***anticipated*** the harm in Illinois, this is a nonstarter, since the Seventh Circuit has recently

rejected this very notion:

> Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law…. The district court thought that Ariel Capital had set out to injure Ariel Investments, knowing that it is located in Illinois. ***That's exactly the sort of allegation the Justices deemed inadequate*** in *Walden*, because "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. The [Supreme] Court added: "These same principles apply when intentional torts are involved."[15]

*Second*, Plaintiffs contend that Menkin and Goureau (and not any other Defendant) are

"closely-related" parties to ***Plaintiffs***' contracts, and since those contracts have Illinois forum

selection clauses, Menkin and Goureau could thus anticipate being haled into Illinois (FAC ¶ 11).

Merely stating these allegations reveals their inadequacy: these are ***not Defendants***' contracts, so

Defendants never agreed to any choices contained therein. Indeed, only Menkin signed the Credit

Agreement and the Security Agreement in her capacity as Plaintiff ML Fashion's President, and

Goureau did not even sign any of them, yet is somehow a "closely-related" party just by being

Plaintiff ML Fashion's member. (*Id.*) Unsurprisingly, courts have rejected similar jurisdictional

---

[15]    *Ariel Investments*, 881 F.3d at 522 (also observing that "Ariel Investments tells us that a defendant should be subject to personal jurisdiction in any state at which it 'aimed its actions.' That contention is ***incompatible*** with *Walden*; it is exactly what the court of appeals in *Walden* had held, and ***not a single Justice accepted the position***.") (emphasis without bold in original). In this connection, contracting with an Illinois resident, by itself, is also insufficient to carry Plaintiffs' burden to the extent they contend that jurisdiction should be grounded on Menkin and Goureau's entering into the LLC Agreement with Lemonis—especially where, as here, the principal meeting and negotiations concerning the formation of ML Fashion took place entirely in New York, and virtually all of Defendants' performance relating to the agreement took place outside of Illinois (Menkin Aff ¶¶ 6-7, 11-13, 16; Goureau Aff. ¶¶ 7-8, 12-13); moreover, the agreement states that it is to be governed by ***Delaware*** law, thus further negating foreseeability of an Illinois forum (Ex. 1 at ¶ 13.9). *See, e.g., Contrak*, 201 F. Supp. 2d at 851 ("[A]n out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts for specific jurisdiction."), citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997); *see also Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir. 1989) ("The question is whether [the defendant] was transacting business in Illinois, not whether [the plaintiff], the Illinois resident, was.").

theories.[16]   Indeed, while "it may have been 'foreseeable' to [defendant] that he was at risk of being sued in Illinois when he 'knowingly allow[ed himself] to become embroiled in a dispute related to a contract with a forum selection clause,' this simply does not mean he 'intended to relinquish [his] constitutional right to be free from suit except in a forum with which [he] has minimum contacts.'"  2019 WL 952138, at *17.[17]   Plaintiffs thus failed to carry their burden on the "purposeful availment" prong, which means that Defendants' motion should be granted.  *See Trek Bicycle Corp. v. Trek Winery, LLC,* 2010 WL 744252, at *7 (W.D. Wis. Mar. 2, 2010) (dismissing for lack of personal jurisdiction where plaintiff could not show specific jurisdiction under the purposeful availment test).

**No "Arising From" Connection, "Fair Play" or "Substantial Justice"**.  To the extent the Court needs to proceed any further, Plaintiffs' injuries do not arise out of Defendants' contacts with Illinois because there are no such contacts.  To be sure, Plaintiffs' claims are based on Menkin

---

[16]       *See Monco v. Zoltek Corp.*, 2019 WL 952138 , at *15-17 (N.D. Ill. Feb. 27, 2019) (rejecting the notion of "closely-related" parties for purposes of jurisdiction based on a forum selection clause where the signatory is an officer who "signs an agreement on behalf of a corporation and indicates next to his signature his corporate affiliation," thus signifying that "the officer is not personally bound), citing, *inter alia, Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996), *Patriot Resource Partners II, LLC v. Service Disabled Veterans Business Assocs., Inc.*, 2008 WL 4534017, at *6 (N.D. Ill. Oct. 3, 2008), and *G2 Enterprises, LLC v. Nee*, 2006 WL 1647518, at *3 (N.D. Ill. June 7, 2006).  In fact, the "closely-related party" concept has been consistently rejected as incompatible with Due Process.  *See Shanghai Daisy*, 2020 WL 4365883, at *6; *Guaranteed Rate*, 264 F. Supp. 3d at 926.

[17]       *See also Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte. Ltd.*, 804 F. Supp. 2d 730, 737 (N.D. Ill. 2011) ("Playboy is attempting to utilize a forum selection clause to obtain personal jurisdiction over a non-signatory defendant—namely, a director of a corporation—and bind him by the forum selection clause.  To adopt Playboy's argument would impermissibly allow a plaintiff to establish personal jurisdiction over directors and shareholders of a corporation simply by alleging that they were closely related to the dispute arising from the agreement.").  And, as discussed, Plaintiffs' allegations that Menkin and Goureau tortuously interfered with those contracts do not change the result.  *See Monco,* 2019 WL 952138, at *17 ("Having determined that [defendant] cannot be subject to jurisdiction based on the forum selection clause, the Court need not consider whether the forum selection clause is broad enough to include the tortious interference claim.").  *Accord SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe Gmbh,* 2015 WL 4162599, at *6-7 (N.D. Tex. July 9, 2015) (granting motion to dismiss for lack of personal jurisdiction where defendant, *inter alia,* was alleged to have tortuously interfered with a contract with a forum selection clause); *Am. Color Graphics, Inc. v. Brooks Pharmacy, Inc.*, 2007 WL 3202748, at *1-2 & n.1 (M.D. Fla. Oct. 29, 2007) (same).

and Goureau's forming Plaintiff ML Fashion with Lemonis (as all subsequent alleged conduct arises from that relationship), yet Defendants' performance under that contract and any purported breaches thereof occurred **outside** of Illinois, thus negating jurisdiction. *See, e.g., Unidex Grp., Inc. v. ECSI Int'l, Inc.*, 2010 WL 502744, at *3 (N.D. Ill. Feb. 9, 2010) (rejecting jurisdiction where alleged breaches occurred outside of Illinois). Similarly, Defendants never visited Illinois in the relevant time period (*see* Menkin Aff. ¶ 17; Goureau Aff. ¶ 15; Nagrani Aff. ¶¶ 7, 10), and thus any purported inventory removal must have also taken place outside of Illinois. In turn, for purposes of the "fair play" and "substantial justice" fairness inquiry, it would be manifestly unfair to subject Defendants to jurisdiction in this forum, as Plaintiffs failed to show that Defendants had sufficient minimum contacts with Illinois to establish even a *prima facie* case of general or specific jurisdiction. *See, e.g., Kroto Inc. v. Chapa*, 2017 WL 2692122, at *2 (N.D. Ill. June 22, 2017).

### B. <u>Venue in This District is Improper</u>

Plaintiffs' complaint also fails to establish proper venue in this District. Under 28 U.S.C. § 1391(b), "an action 'may be brought' in three—**and only three**—locations: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 289 (N.D. Ill. 2019) (Seeger, J.) (dismissing action for improper venue). Plaintiffs hang their venue hat on the last two prongs (FAC ¶ 14) but each fails here.[18] Under the second prong, no events occurred

---

[18] Plaintiffs also cite "a mandatory venue provision [which] requires exclusive venue" in this District, which is presumably the forum selection clause in the Credit and Security Agreements (FAC ¶ 14). As

13

here, let alone "a substantial part" thereof, as discussed above. Menkin and Goureau negotiated and performed the LLC Agreement elsewhere, and the alleged tortious conduct was likewise undertaken, if at all, in other states—***Plaintiffs' residence*** in Illinois does not suffice.[19] And under the third "last resort" prong, Plaintiffs cannot proceed here because, as discussed, none of the Defendants is subject to personal jurisdiction in this District—especially since there is another venue that is already hosting litigation based on substantially the same facts: namely, Delaware.[20] As such, the complaint should also be dismissed for improper venue.

## C. Plaintiffs Failed to State Any Viable Claims

### 1. Plaintiffs' Federal Statutory Claims Fail, and So Does Federal Question

**Lanham Act Claims Fail.** Plaintiffs bring claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), which this Court has already rightly questioned as suspect (Dkt. No. 12). Indeed, neither of these claims can proceed.

**False Advertising.** To state a false advertising claim under the Lanham Act, Plaintiffs must allege: "(1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged

---

[19]     *See Ford-Reyes*, 418 F. Supp. 3d at 291 (for venue purposes, "it is not enough to allege that one of the Plaintiffs suffered harm in Illinois. Otherwise, a plaintiff could always have a home-court advantage. Indeed, it takes only a moment's thought to realize that if economic harm to a plaintiff were really enough …, [no other prongs] would ever have to be looked at, for a plaintiff could *always* bring suit at its home base on the premise that it has suffered harm there…. The test is not where a plaintiff suffered harm. And the test is not where a plaintiff suffered ***most*** of the harm. Venue is proper wherever the acts or omissions substantially took place, even if a plaintiff suffered harm someplace else.") (original emphasis).

discussed above, these agreements are not binding on any of the Defendants here. Notably, none of the claims actually arises from these agreements anyway, as the core dispute is concerned with the rights and obligations under the LLC Agreement. *See, e.g.*, *Want2Scrap, LLC v. Larsen*, 2018 WL 1762853, at *7 (N.D. Ind. Apr. 9, 2018) (observing that "the validity and enforceability of a forum selection clause are non-issues if the substantive legal dispute in the litigation does not arise out of the agreement containing the forum selection clause, as in this case").

[20]     *Id.* (no venue under the third prong where an alternative venue could properly host the dispute).

as a result of the misrepresentation." *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695-96 (7th Cir. 1999). The claim fails on (at least) the first element because there is no allegation of any designation of origin, false or otherwise.[21] The advertising and social media posts that Plaintiffs attach (Exs. 4-6) show that Defendants[22] sell third-party fashion labels they are neither branded "Nobelle" nor show any affiliation with the Plaintiffs: they are third-party designers such as Autumn Cashmere or others. As such, the only designation of origin here is the designer that made the goods, and there is nothing false or misleading about such a designation.[23]

Moreover, since the claim requires a showing that "the defendants made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience," *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016), it is subject to the heightened pleading requirements of Rule 9(b). Here, Plaintiffs failed to identify which specific statements they believe are false or misleading, much less describe those purported misstatements with the required particulars. Indeed, Plaintiffs recite only conclusory, threadbare, formulaic recitations of the elements of the cause of action (FAC ¶¶ 170-175)—yet a generic recitation of the elements of a claim fails to even provide notice pleading under Fed. R. Civ. P. 8(a), let alone the rigorous standard of Rule 9(b).

---

[21]     Plaintiffs also fail to specify what goods, if any, entered interstate commerce and what kind of damages Plaintiffs believe they would suffer, be it from any kind of consumer confusion (for which they offer no facts in support) or otherwise.

[22]     Plaintiffs do not appear to allege any involvement by Defendant Goureau in making purportedly false or misleading statements for purposes of their false advertising claim; as such, it must be dismissed as stated against him. *See Telebrands Corp. v. My Pillow, Inc.*, 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (dismissing Lanham Act claim where plaintiff failed to allege that defendant had any involvement or participation in the allegedly false advertisement).

[23]     *Cf. Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014) (dismissing false advertising claim based on alleged false designation of origin where plaintiff failed to allege that defendant changed any actual designation of origin on the product). While Plaintiffs allege that Defendants took "privately branded ML Fashion products" (FAC ¶ 82), they never allege that Defendants changed that branding and now sell them as "Nobelle" products (or under any other false designation). To the extent Plaintiffs argue that selling these products at Nobelle is somehow a representation that Nobelle has the right to do so, this is not enough for a "false origin" claim either. *See, e.g., GK Skaggs, Inc. v. Hartford Cas. Ins. Co.*, 579 F. App'x 542 (9th Cir. 2014).

Defendants cannot reasonably be expected to answer and defend against a claim about which they know almost nothing. *See CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) (dismissing similar "nebulous allegations" because "[defendants] and the court are left to speculate what specific advertisements and statements underlie" the Lanham Act claims").

**Unfair Competition.** Plaintiffs allege the same exact conduct for this claim, so it must fail for the same reasons as stated above.[24] Moreover, to the extent this claim attempts to plead trademark infringement, *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 n.16 (7th Cir. 1976) ("[t]rademark infringement is one form of unfair competition"), Plaintiffs must allege that: "(1) [their] mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers."[25] Here, the complaint is devoid of any allegations regarding *any* mark, let alone discussion of such mark being protectable, as Plaintiffs are required to allege.[26] Plaintiffs also fail to allege a likelihood of confusion as part of the second element for an unfair competition claim under the Lanham Act. The Seventh Circuit has laid out seven factors to test the plausibility of a likelihood of confusion allegation,[27] and Plaintiffs here set forth no allegations to support any of them. For example, as to the actual confusion, all Plaintiffs say is that

---

[24] Since Plaintiffs also claim that the same conduct that constitutes unfair competition the Lanham Act is also violative of "Illinois common and statutory law" (FAC ¶ 177), "'the legal inquiry is the same under both … [as c]laims for unfair competition … brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.'" *Desmond v. Chi. Boxed Beef Distribs.*, 921 F. Supp. 2d 872, 884 (N.D. Ill. 2013), quoting *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004).

[25] *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 817 (N.D. Ill. 2016); *see also Phx. Entm't, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016).

[26] *See Hart*, 191 F. Supp. 3d at 817; *Villa v. Brady Publ'g*, 2002 WL 832574, at *2 n.1 (N.D. Ill. May 2, 2002) (holding that plaintiff failed to make an unfair competition claim because plaintiff "ma[d]e no allegation that his artwork is a protectable mark as required under § 1125(a)"), vacated on other grounds by *Villa v. Brady Pub.*, 2002 WL 1400345 (N.D. Ill. June 27, 2002).

[27] They are: "[1] the degree of similarity between the marks in appearance and suggestion; [2] the similarity of the products for which the name is used; [3] the area and manner of concurrent use; [4] the degree of care likely to be exercised by consumers; [5] the strength [or 'distinctiveness'] of the complainant's mark; [6] actual confusion; and [7] an intent on the part of the alleged infringer to palm off his products as those of another." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 702 (7th Cir. 2014).

Defendants' unspecified actions are "confusing" consumers, without any further elaboration or details (FAC ¶ 115). This is not enough, even for notice pleading.[28] Indeed, the single assertion of the supposed "confusion" proffered by Plaintiffs is nothing but a label "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 557.[29] This claim is thus due to be dismissed as well.[30]

**CFAA Claim Fails.** Plaintiffs fail to adequately allege either damages or loss, thus warranting dismissal of their claims alleged under the Computer Fraud and Abuse Act ("CFAA").[31] *First*, Plaintiffs' allegations relating to the decommissioned computers at issue state nothing more than purported misappropriation of trade secrets (FAC ¶¶ 93 & 94), which, as a matter of law, fail to show the required "impairment to the integrity or availability of data, a program, a system, or information" to establish damages under the statute.[32] This dooms any supposed claim under Section 1030(a)(5) of the statute. *Second*, Plaintiffs fail to allege "loss" as defined by the CFAA warranting dismissal of their claims under Sections 1030(a)(2) and (a)(4) as well.[33] Nowhere do Plaintiffs allege that Defendants somehow damaged any information on the

---

[28] *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"), quoting *Twombly*, 550 U.S. at 555; *see also Arvegenix, LLC v. Seth*, 2014 WL 1698374, at *7 (C.D. Ill. Apr. 29, 2014) (dismissing Lanham Act claim: "[B]are recital of the [confusion] element … does not state a plausible basis for the claim.").

[29] This is especially so given that the third-party branded merchandise involved "are [not] the kind the public attributes to a single source," thus further foreclosing any possible confusion as a matter of law. *See Fortres*, 763 F.3d at 703 (upholding dismissal).

[30] Given that Plaintiffs two Lanham Act claims should be dismissed, and there is no contractual right to attorneys' fees under the LLC Agreement, Defendants request that Plaintiffs' prayer for relief seeking attorneys' fees should be stricken from the FAC as well.

[31] *See Cassetica Software, Inc. v. Computer Scis. Corp.*, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009) (reciting the elements); *see also Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, 2018 WL 1156246, at *4 (N.D. Ill. Mar. 5, 2018) ("damage is an express requirement of section 1030(a)(5)(A)"). (*Cf.* FAC ¶ 186 (alleging claims under 18 U.S.C §§ 1030(a)(2), 1030(a)(4), & 1030(a)(5).)

[32] *Sam's Wines & Liquors, Inc. v. Hartig*, 2008 WL 4394962, at *3 (N.D. Ill. Sept. 24, 2008), citing, *inter alia*, *Garelli Wong & Assoc., Inc. v. Nichols*, 551 F.Supp.2d 704, 710 (N.D.Ill.2008); *see also E.R. James Real Estate Servs., LLC v. Spinell*, 2011 WL 5078873, at *2 (N.D. Ill. Oct. 26, 2011) ("Absconding with confidential information is not 'damage' unless the theft impairs the underlying data.").

[33] *See Cassetica Software*, 2009 WL 1703015, at *4 (holding that "loss" under the CFAA must be related to "the investigation or repair of a computer system ***following a violation that caused impairment***

computers at issue, which is required to allege cognizable loss under the statute (*see, e.g.*, *Cassetica Software, Inc.*, 2009 WL 1703015, at \*4); rather, all Plaintiffs claim is that Defendants accessed trade secrets that the computers supposedly contain. But "economic costs unrelated to computer systems do not fall within the statutory definition of [loss]," leaving these claims without the required loss element as well.[34]

**Plaintiffs Fail to Properly Plead DTSA Claims.** Plaintiffs also allege two claims under the Defense of Trade Secrets Act of 2016 ("DTSA"): (1) misappropriation of trade secrets (FAC ¶¶ 190-206) and (2) threatened misappropriation (*id.* ¶¶ 207-219). The requirements of stating a claim under the DTSA appear deceptively simple: first, Plaintiffs must "allege facts sufficient to provide notice that the relevant information constitutes a trade secret." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1065 (N.D. Ill. 2020) (referencing 18 U.S.C. § 1836(b)(1)); *see also NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, 2020 WL 2836778, at \*10 (N.D. Ill. May 31, 2020) ("A plaintiff must identify the purported trade secret with an appropriate level of specificity.") (Seeger, J.). Then, once the existence of a trade secret has been established, Plaintiffs "must sufficiently allege that the defendant has misappropriated the trade secret within the meaning of § 1836(b)(1)." *Packaging Corp.*, 419 F. Supp. 3d at 1065. As shown below, Plaintiffs' allegations fail on both prongs.[35]

---

*or damage to a computer*"), citing, *inter alia, Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 812 (N.D. Ill. 2009) (observing that without damage to computer system, a "damage assessment" does not qualify as a loss).

[34] *Cassetica Software, Inc.*, 2009 WL 1703015, at \*4 (collecting cases); *see also Int'l Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006) (explaining that the purpose behind the CFAA was to prevent destruction of information).

[35] These claims, as many Plaintiffs' claims do, also improperly rely on indiscriminate group pleading and thus fail for this reason as well. Indeed, Plaintiffs simply refer to "Defendants" as a whole and do not explain who did what (FAC ¶¶ 190-219). Yet "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *see also Atkins v. Hasan*, 2015 WL 3862724, at \*2 (N.D. Ill. June 22, 2015) ("Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to

*First*, the purported trade secret must be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).[36]  Plaintiffs then "must show the information: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy and confidentiality." *GE v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 831 (N.D. Ill. 2019). Plaintiffs' allegations do not establish the required level of secrecy here.  Indeed, while they allege use of confidentiality agreements, "such an agreement, without more, is not enough." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 851 (N.D. Ill. 2011).  Indeed, even with a confidentiality agreement, companies are expected to use superior protective measures for alleged proprietary trade secrets than those used for any other corporate information.[37]  Here, the FAC does not specify anything beyond ordinary business practices for keeping any other

---

relief must include such particulars.").  The FAC in this instance is like the complaints in *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, 2018 WL 1156246, at *2-3 (N.D. Ill. Mar. 5, 2018), and *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *2-3 (N.D. Ill. Sept. 26, 2017), where courts dismissed similarly pleaded DTSA claims for failing to distinguish among the several defendants.  Here, Plaintiffs' FAC is even worse, as all the DTSA counts are against all Defendants and do not so much as mention an individual defendant within either count.  This alone is fatal to both DTSA claims.

[36]     The DTSA itself states that trade secrets include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]" 18 U.S.C. § 1839(3).  Here, the purported trade secrets include: customer information, including detailed information about customer preferences and quality standards, ordering and sales histories, pricing strategies (FAC ¶ 98); supply chain information, including detailed information about supplier and vendor sources, products, services, prices, inventory information, logistical solutions (*id.* ¶ 99); business strategies, including market positioning, market intelligence, forecasts and plans, sales and marketing techniques, product comparisons, margin policies by customer product line (*id.* ¶ 100); and more.

[37]     *See Opus*, 2018 WL 1156246, at *3 (holding that "[a]n employer must use additional measures to protect the confidentiality of information he considers to be a trade secret" and finding such measures as password protection, confidentiality agreements, and prohibiting disclosure to third parties to be insufficient to establish a trade secret because they were merely normal business practice for protecting ordinary information).

company information. In fact, Plaintiffs' own allegations confirm that they themselves do not treat their purported secrets as secrets.[38] This is especially so given the allegations that Plaintiffs failed to clear supposed confidential data from their decommissioned computers—indeed, they supposedly left it on **multiple** computers, unencrypted, sitting somewhere until someone, whom they cannot even identify, decided to power them on (FAC ¶¶ 93-95). This alone negates any claim of a supposed trade secret.[39]

*Second*, even if Plaintiffs had properly alleged a trade secret (which they did not), they failed to establish the required misappropriation.[40] This is because Plaintiffs improperly conflate **misappropriation** of confidential information with **possession** of such information. The latter does not state a claim. *See Packaging Corp.*, 419 F. Supp. 3d at 1066 ("mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets"). Here, Plaintiffs allege that the information came from a computer that belonged to a former employee (FAC ¶ 93). Where, as here, confidential information is obtained during the course of employment, it is not improperly obtained, and there is no misappropriation. *See id.* Even if that information is not returned, "the failure to return lawfully acquired information does not constitute

---

[38] Notably, Plaintiffs' own allegations undercut the claimed trade secret status. For instance, Plaintiffs claim that employees and others are required to sign non-disclosure agreements (FAC ¶ 102), yet conspicuously missing is any claim that *any of the Defendants* ever signed such an agreement. Moreover, Plaintiffs claim that ML Fashion controls dissemination of confidential information and keeps such information on a "need to know" basis (*id.*), yet this information somehow ends up on a computer that belonged to a "former accounts payable employee" (*id.* ¶¶ 93 & 96-100). Plaintiffs do not explain why it is reasonable for someone in accounts payable to keep trade secrets regarding so many areas of the business stored on a local computer. Based on Plaintiffs' own allegations, if Plaintiffs actually do have security policies, they do not bother to enforce them.

[39] *See CMBB LLC v. Lockwood Mfg., Inc.*, 628 F. Supp. 2d 881, 885 (N.D. Ill. 2009) ("[Plaintiff's] failure to *ensure* that [defendant's] laptop was stripped of Customer Information when she left the company goes to show that it did not treat such Information as confidential or a trade secret.") (original emphasis).

[40] The DTSA "defines misappropriation as either the 'acquisition of a trade secret of another … by improper means' or the 'disclosure or use of a trade secret of another without express or implied consent.'" *Packaging Corp*, 419 F. Supp. 3d at 1066 (quoting 18 U.S.C. § 1839(5)(A)-(B)). "The term 'improper means' includes theft, bribery, misrepresentation, breach of a duty to maintain secrecy, or espionage through electronic or other means; and does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

'misappropriation' of that information under the DTSA."[41]  Misappropriation based on improper acquisition centers on the actual *acquisition* of the information and not *retention*.[42]  Here, Plaintiffs admit that Defendants were initially authorized to access the computers. (*See* FAC ¶ 109). Since Plaintiffs offer no concrete facts supporting the claimed misappropriation, aside from their improper labels and legal conclusions (*see id.* ¶¶ 190-206), the claims should be dismissed for this reason as well.

Finally, Plaintiffs' nearly identical claim for threatened misappropriation under DTSA also fails.[43] This is because Plaintiffs ground this claim on the very conduct that DTSA specifically allows.  (*Compare* 18 U.S.C. § 1836(b)(3)(A)(i) (allowing injunctive relief for "threatened misappropriation" but only if it does not "prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows."), *with* FAC ¶ 214 (alleging threatened misappropriation through "partnering and hiring former employees of Plaintiffs with knowledge of Plaintiffs' trade secrets")).  As there is no other cognizable pleaded basis for any threatened misappropriation here,[44] this claim should also be dismissed.

---

[41]     *Id.*; *see also Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661 at *4 (N.D. Ill. Dec. 18, 2017) (rejecting argument that the defendant obtained information by improper means where he retained access, initially acquired during the normal course of his employment, to a DropBox folder and external hard drive that contained confidential information).

[42]     *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1129, n.8 (9th Cir. 2010) (finding that defendant "acquired" the trade secret properly as an employee; deleting employer's copies of the secret and failing to turn it over to the employer "amounted to improper retention, not improper acquisition" and could not support misappropriation of a trade secret); *see also Lifesize, Inc. v. Chimene*, 2017 WL 1532609, at *8 (W.D. Tex. Apr. 26, 2017) (finding that while defendant may have improperly *retained* trade secrets, as well a laptop and notebooks containing them, he did not *acquire* them improperly because he had permission of his employer when he initially gained access).

[43]     Curiously enough, Plaintiffs include a reference to interstate commerce in their misappropriation claim (FAC ¶ 192), but they fail to do so in their threatened misappropriation claim. This alone is enough to dismiss the claim.  *See, e.g., Hydrogen Master Rights, Ltd. v. Weston*, 228 F.Supp.3d 320, 338 (D. Del. 2017).

[44]     As discussed, the alleged "refusal to return Plaintiffs['] computers containing Plaintiffs' confidential, proprietary, and trade secret information" (FAC ¶ 214) is not a cognizable basis because mere refusal to return confidential information is not enough for misappropriation or threatened

21

**No Federal Question Remaining**.  Once the federal question claims are dismissed, the Court should decline exercising supplemental jurisdiction over the remaining state law claims and thus dismiss this action in its entirety.[45]

### 2.  Plaintiffs Failed to State Any Valid Fraud Claims[46]

Plaintiffs' claim that Defendants defrauded them (FAC ¶ 144) is a public accusation that represents a serious attack on Goureau and Menkin's character and their business reputation, yet Plaintiffs here offer little to support it.   To ensure that plaintiffs do not assert false or unsubstantiated fraud claims, Rule 9(b) imposes a heavy burden—not even remotely met here—requiring a plaintiff to plead the facts supporting a fraud claim with specificity and provide detailed factual allegations for every element of the alleged fraud.[47]  As discussed, to satisfy the heightened pleading requirements for fraud under Rule 9, a plaintiff must allege "the who, what, when, where, and how"—that is, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Uni*Quality*, 974 F.2d at 923; *accord DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  "[C]onclusory allegations of fraud do not satisfy the Rule 9(b) standard."  *LoggerHead Tools, LLC v. Sears Holding Corp.*, 2013 WL 1858590, at *5 (N.D. Ill. 2013), citing *U.S. ex rel. Gross v. AIDS Research All.-Chicago*, 415 F.3d 601, 603-04 (7th Cir.

---

misappropriation.  *See Packaging Corp.*, 419 F. Supp. 3d at 1065-71; *Dalton*, 2017 WL 6988661, at *4.

[45]     *See Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 843-44 (N.D. Ill. 2020) (Seeger, J.) ("The Court follows the ***presumption*** that it will relinquish federal jurisdiction over the state-law claims absent a federal hook, and thus declines to exercise jurisdiction over these supplemental state law claims.").

[46]     Plaintiffs' common law claims are either expressly grounded on or arise from the LLC Agreement, which, as discussed, mandates that "the interpretation of the rights and duties arising thereunder" to be governed by Delaware law (Ex. 1 at ¶ 13.9).  Out of abundance of caution, however, Defendants will note if Illinois law diverges from that of Delaware on any issues set forth herein.

[47]     *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007), *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 910 (7th Cir. 2009); *see also Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777 (7th Cir. 1994) (noting that the purpose of Rule 9(b) is to "protect[] a defendant's reputation from harm; (2) minimize[e] strike suits and fishing expeditions; and (3) provid[e] notice of the claim to the adverse party").

2005).  As such, "the plaintiff must identify particular statements and actions and specify why they are fraudulent."  *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).

Despite the serious nature of the accusation, Plaintiffs here offer scant details to substantiate it.[48]  Indeed, Plaintiffs' fraud claim is deficient for at least two reasons.  *First*, the claim must fail because the allegation fails to meet the notice pleading standards of Rule 8, let alone the heightened pleading standard of Rule 9(b).  Indeed, while the statement of the claim makes nebulous references to some false promises that Defendants would not take possession of Plaintiffs' property and use company funds for business purposes only (FAC ¶ 144),[49] one is hard pressed to find any required details supporting these purported promises.[50]  *See, e.g.*, *Merrill Lynch Bus. Fin. Servs., Inc. v. Gray Supply Co.*, 1991 WL 127610, at *4 (N.D. Ill. July 9, 1991) ("Nor do defendants set forth the time or place in which these unidentified representatives made the misleading statements.").  Notably, Plaintiffs supposedly assert the fraud claim against "all" Defendants but make no attempt to point to any specific misrepresentations by Nobelle.  In short, Defendants are left guessing as to the "what, when, where and how" of the fraud claim here.  This

---

[48]      Under Delaware law, a plaintiff claiming fraud must plead: "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless disregard of the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance."  *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 604 (7th Cir. 2019); *accord Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (applying the same elements under Illinois law).

[49]      The promises, if any, were apparently made in unison, since this allegation lumps Menkin and Goureau together without any further explanation or detail.  That is not particularized pleading either.  *See Vicom*, 20 F.3d at 778 (7th Cir. 1994) (observing that courts rejected complaints that "lumped together" multiple defendants, while adding that "in a case involving multiple defendants, such as the one before us, 'the complaint should inform ***each*** defendant of the nature of his alleged participation in the fraud'").

[50]      In similar vein, Plaintiffs allege that Menkin and Goureau supposedly represented to Lemonis (again, in unison) that their mother was performing services on behalf of ML Fashion in exchange for receiving a salary (FAC ¶ 60), but Plaintiffs do not allege how, when, and where Defendants made these purported statements.  Plaintiffs also allege that Menkin and Goureau promised they would stop using company resources for their personal benefit and that Menkin, purportedly, told Lemonis "I know, I know; I am dealing with it" (FAC ¶ 64), yet there is no specific allegation about how or when Menkin made this alleged statement (or any details as to Goureau).

is not notice pleading, let alone particularized pleading.[51]  Moreover, to the extent the heightened

particularity standard allows one to ***imply*** fraudulent statements from the allegations (which it does

not), and Plaintiffs seek to imply the alleged promises from the parties' contractual obligations

arising from the LLC Agreement, this is a breach of contract claim in disguise rather than "a fraud

claim, further justifying the requested dismissal.[52]

 *Second*, to the extent Plaintiffs have any fraud theory at all, it is one by hindsight, which is

impermissible and provides an additional ground for dismissal here.  *See DiLeo v. Ernst & Young*,

901 F.2d 624, 628 (7th Cir. 1990) (upholding dismissal: "There is no 'fraud by hindsight,' . . . ,

and hindsight is all [plaintiffs] offer.").  Indeed, all Plaintiffs hint at as the possible basis for their

fraud claim adds up to nothing more than unfulfilled promises, which are not actionable as fraud—

unless Plaintiffs plead sufficient facts that the promises were made with no intent to perform *at the

time they were made*, which Plaintiffs do not even begin to plead here.[53]  Accordingly, Plaintiffs'

---

[51] *See Uni\*Quality*, 974 F.2d at 923-24 (upholding dismissal of fraud claims where the allegations only stated "the general subject matter of the alleged misrepresentations" and failed to establish "the time the misrepresentations were made, or the places at which the misrepresentations were made"); *United States ex rel. McGinnis v. OSF Healthcare Sys.*, 2014 WL 2960344, at *7 (C.D. Ill. July 1, 2014) (pleading general statements "is not sufficient to satisfy the pleading requirements under Rule 8, let alone Rule 9(b)"), citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Arriaga v. Wells Fargo Bank, N.A.*, 2011 WL 4738522, at *11 (N.D. Ill. Sept. 30, 2011) (holding that fraud allegations that lack specific details as to the content, time or place of the alleged misrepresentations fail "to satisfy the plausibility requirement of Rule 8(a), let alone the particularly requirement of Rule 9(b)").

[52] *See Cross v. Batterson*, 2017 WL 2793398, at *8 (N.D. Ill. June 28, 2017) (applying Delaware law: "Plaintiffs' fraudulent concealment cause of action … is dismissed … because it is a poorly disguised contract claim…."); *accord Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1335 (Ill. App. 1995) (when a complaint alleges unperformed contractual promises, "such a representation, even where made with an intention not to perform, is not actionable as fraud"); *see also Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (lamenting that "[t]here is a risk of turning every breach of contract suit into a fraud suit, of circumventing the limitation that the doctrine of consideration is supposed however ineptly to place on making all promises legally enforceable" and rejecting fraud claim under Illinois law); *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (rejecting the proposition that "anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed").

[53] *See StunFence, Inc. v. Gallagher Sec. (USA), Inc.*, 2002 WL 31109456, at *2 (N.D. Ill. Sept. 20, 2002) (rejecting fraud claim based on similar pleading failures); *see also Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) (rejecting fraud claim where "evidence of intent to defraud consists of nothing more than unfulfilled promises and allegations made in hindsight"); *TopstepTrader, LLC v. OneUp Trader, LLC*, 2018 WL 1859040, at *10 (N.D. Ill. Apr. 18, 2018) ("Misrepresenting an

fraud claims are due to be dismissed.

### 3. The Conversion and Fiduciary Breaches Claims Cannot Proceed

Plaintiffs' fiduciary duty claims against Defendants Menkin and Goureau are similarly inadequate for at least two reasons. *First*, it is well established in Delaware that passive members of a limited liability company cannot be held liable for breaches of fiduciary duty. The LLC Act differentiates between two basic types of members: "members who are also managers and exercise managerial functions in a member-managed LLC, and members who are passive investors like limited partners." *Feeley v. NHAOCG, Ltd. Liab. Co.*, 62 A.3d 649, 662-63 (Del. Ch. Ct. 2012). "Managers and managing members owe default fiduciary duties; passive members do not." *Id.*[54]

Here, Plaintiffs concede that under the LLC Agreement, Defendants Menkin and Goureau are mere members of ML Fashion and that "ML Fashion's members do not have any right to participate in the management or control of ML Fashion, or to act for or bind ML Fashion in any way" (FAC ¶¶ 27 & 34). Plaintiffs further allege that "the management of ML Fashion is vested entirely and exclusively in the manager of ML Fashion," Marcus Lemonis (*id.* ¶¶ 32 & 33). As passive members of ML Fashion, Defendants cannot be held liable for breaches of fiduciary duties. And although Defendant Menkin holds the title of President, the LLC Agreement unequivocally— and "exclusively"—grants ***all*** managerial powers to Lemonis (*id.* ¶ 32), and he is the only one that can, at his sole discretion, delegate such powers to officers (*see* Ex. 1 at § 6.1(c)), which Plaintiffs do not allege he has done vis-à-vis Menkin. In fact, Sections 6.1(a) and 7.1 of the LLC Agreement expressly forbid Members from any managerial involvement. (*Id.*) Plaintiffs' cause of action for

---

intention to perform future conduct does not constitute fraud under Illinois law."); *Mkt. Am., Inc. v. Google, Inc.*, 2010 WL 3156044, at *4 (D. Del. Aug. 9, 2010) (same under Delaware law).

[54]    *See also Imbert v. LCM Interest Holding LLC*, 2013 WL 1934563, at *7 (Del. Ch. May 7, 2013) ("Delaware law imposes no default fiduciary duties on non-managing, non-controlling members of limited liability companies.").

fiduciary breaches thus fails on its face.

*Second*, Plaintiffs' fiduciary duty claims also fail because they seek to recover for contractual breaches. "[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim, and any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."[55] Accordingly, to the extent that Plaintiffs allege that Menkin and Goureau breached their fiduciary duties by "operating a business, Nobelle, that is competing with ML Fashion," this claim is identical to their breach of contract claim and is therefore superfluous. (*Compare* FAC ¶ 128, *with id.* at ¶ 136.) Moreover, to the extent that Menkin and Goureau are alleged to have interfered with Lemonis' exclusive rights to manage the Company property (Ex. 1 at § 6.1) or the Company's contractual rights of ownership of the inventory (*id.* § 2.7), or misused funds ML Fashion secured through the Credit and Security agreement (*id.* § 5.1(a); Ex. 2 at § 5.1), that claim arises out of the express provisions of the LLC Agreement and the Credit Agreement and, as such, cannot proceed as a fiduciary breach claim either.

In turn, to the extent Plaintiffs' conversion claim is similarly dependent on contractual definitions and obligations, including Lemonis' exclusive management rights over the Company's property, it should also fail for the same reasons.[56] Additionally, Plaintiffs have attached

---

[55] *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *18 (Del. Ch. Sept. 18, 2014); *see also Gale v. Bershad*, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998) ("To allow a fiduciary duty claim to coexist in parallel with an implied contractual claim, would undermine the primacy of contract law over fiduciary law in matters involving the essentially contractual rights and obligations of preferred stockholders.").

[56] *See, e.g., Meadoworks, LLC v. Linear Mold & Eng'g, LLC*, 2020 WL 5365977, at *1 (N.D. Ill. Sept. 8, 2020) ("In Illinois, the economic loss rule bars recovery in tort for purely economic loss between contracting parties."), citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012); *Lansing v. Carroll*, 2012 WL 4759241, at *2 (N.D. Ill. Oct. 5, 2012) (extracontractual "duty not to steal" does not preclude application of the economic loss doctrine to conversion); *cf. West v. Access Control Related Enterprises, LLC*, 2019 WL 2385863, at *4 (Del. Super. Ct. June 5, 2019) (dismissing conversion claim: "Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort. [C]ourts recognize that a breach of contract will not generally constitute a tort.") (alteration in original).

documents confirming that the inventory transfer was authorized by Lemonis, which further eradicates any validity for any purported conversion. (Ex. 8.)[57] Moreover, the conversion claim is partially preempted.[58]

### 4. Plaintiffs' Breach of Contract Claim Should Not Proceed

Plaintiffs claim that Menkin and Goureau breached Section 7.7(b) of the LLC Agreement by competing with ML Fashion and by misusing ML Fashion funds (FAC ¶¶ 131-142). Plaintiffs do not explain how a store in Connecticut effectively "competes" with Plaintiffs' stores in Illinois. But most importantly, the restrictive covenant at issue is too draconian to be enforced "as is." Indeed, it has no geographical limit ("anywhere in United States"), it is entirely one-sided, since it specifically *excludes* Lemonis and ML Retail from any reciprocal noncompetition obligations (Ex. 1 at § 7.7(f)), and it strips any member, such as Menkin and Goureau, from any ability to earn their livelihood through their chosen profession for an entire year after they separate from the Company, along with prohibiting association with any entity in the fashion retail business. This is unenforceable under Delaware law, unless the Court chooses to reform the covenant by imposing

---

[57]    *See Indus. Hard Chrome, Ltd. v. Hetran, Inc*., 90 F. Supp. 2d 952, 956-57 (N.D. Ill. 2000) (dismissing conversion claim where allegations indicate possession was not wrongful); *See also Hancock v. Sotheby's*, 2018 WL 6696071, at *7 (N.D. Ill. Dec. 20, 2018) ("there are no facts to support the contention that the Sotheby's Defendants wrongfully assumed control, dominion, or ownership over the photographs"); *see also Ruebe v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 840 (N.D. Ill. 2020) ("When a complaint is at odds with one of its own exhibits, the exhibit typically prevails.").

[58]    To the extent that Plaintiffs base their conversion claim on the data allegedly on the computer, it is preempted by the Illinois Trade Secrets Act ("ITSA"). *See Hecny Tramp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir.2005) (referencing 765 ILCS 1065/8). While Plaintiffs may seek to recover the value of the computer itself, they cannot claim conversion for the information it contains. *See CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567223, at *2 (N.D. Ill. Feb. 27, 2008) (holding that ITSA preempted any claims on the trade secrets allegedly contained within misappropriated cardio kits); *see also Lifesize, Inc. v. Chimene*, 2017 WL 1532609, at *12 (W.D. Tex. Apr. 26, 2017) ("Where the plaintiff directs its conversion claim at the loss of the intangible right contained or integrated with the tangible item . . . [the claim] falls within the language of [the] preemption statute."). Moreover, as Plaintiffs assert only that the computer has a *copy* of the information at issue, the conversion claim necessarily fails because "[i]n cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990).

appropriate limits—such as, for example, allowing Defendants to operate in their limited market of Greenwich, Connecticut.[59]  As for the alleged misuse of funds, Plaintiffs do not identify any express contract provision that Defendants supposedly breached, thus warranting dismissal of the contractual claims for that reason as well.  *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (affirming dismissal of plaintiff's breach of contract claim because it did not identify "any express contract provision that was breached").[60]

### 5.  Plaintiffs Do Not Plead Valid Aiding and Abetting Claims

Plaintiffs fail to adequately plead their claims for aiding and abetting and cannot state a claim as a matter of law.  As an initial matter, it is unclear whether this is even a separate claim. *See Nicholas J. Murlas Living Trust v. Mobil Oil Corp.,* 1994 WL 130778, at *6 (N.D. Ill. Apr. 13, 1994) ("[T]here is no separate tort under Illinois law for aiding and abetting."), citing *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982).  It certainly is not with respect to the allegations concerning assistance in Defendants Menkin and Goureau's alleged "breach[es] of the noncompetition provision of the LLC Agreement" (FAC ¶¶ 166-168). "Illinois law does not recognize a cause of action for aiding and abetting breach of contract."[61]  As to Defendants

---

[59]     *See Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *13 (Del. Ch. Oct. 23, 2002) (reading geographic restriction into covenant in order to enforce it); *Gas Oil Prod., Inc. of Delaware v. Kabino*, 1987 WL 18432, at *2 (Del. Ch. Oct. 13, 1987) (imposing geographic restriction in a covenant where agreement lacked it); *cf. Arpac Corp. v. Murray*, 589 N.E.2d 640, 651 (Ill. App. 1992) (noncompete provision "unjust and void as against public policy" where it imposed "virtually unlimited geographic restraints on competitive activities and . . . restriction from association with any company whose activities involve competition in the … industry"); *see also Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 718 (N.D. Ill. 2014) (noncompete covenant unenforceable; dismissing claim).

[60]     In addition, both contractual claims also fail under Rule 8 because Plaintiffs fail to identify if they performed their own contractual duties—or what those duties even are—aside from the conclusory allegation that they "each fully performed their obligations under the LLC Agreement." (FAC ¶ 135.)  This is insufficient under Rule 8 pleading requirements, thus serving as an additional ground for dismissal of Plaintiffs' breach of contract claim.  *See Merrill Lynch*, 1991 WL 127610, at *5 (dismissing breach of contract counterclaim in part for failing to specify nature of counterclaimants' duties under the contract).

[61]     *Zachman v. Vohra*, 2015 WL 7423783, at *4 n.3 (N.D. Ill. Nov. 23, 2015) (noting plaintiff's allegation for aiding and abetting of a breach of contract "must fail"); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 413 n.6 (7th Cir. 2000) (noting that it could not find an Illinois case recognizing a cause of action for aiding and abetting a breach of contract); *accord Wenske v. Blue Bell*

purported assistance of Nobelle's "competing" (FAC ¶¶ 163; *see also* ¶¶ 164-165), Nobelle is not

a party to the LLC Agreement, and its competing is legitimate, unless Plaintiffs properly stated a

claim for conversion on Nobelle's part (which, as discussed, they did not). As such, the entire

aiding and abetting claim (to the extent it is even a claim) should be dismissed.

### 6. Plaintiffs' Tortious Interference Allegations Fail to State a Valid Claim

Plaintiffs also allege that all Defendants tortiously interfered with the Credit and Security

Agreements (FAC ¶¶ 148-153) and with the LLC Agreement's noncompetition provisions (*id.* ¶¶

154-161). As an initial matter, the latter claim must fail as to both Goureau and Menkin, since

they are parties to the LLC Agreement (*id.* ¶ 132) and cannot interfere with their own contract.[62]

Further, if Plaintiffs' allegations are to be accepted as true (as they must be for purposes of this

motion), then neither Menkin nor Goureau is a "stranger" to the Credit and Security Agreements

either, since Plaintiffs allege they are "closely-related" parties to those contracts (FAC ¶ 87), thus

dooming the former claim as to them as well.[63]

In any event, the claims cannot proceed as stated.[64] *First*, Plaintiffs' claims do not set forth

---

*Creameries, Inc.*, 2018 WL 3337531, at *17 (Del. Ch. July 6, 2018) (stating same rule in Delaware).

[62] *See Epic Ins. Co. v. Nat'l Hosp. & Health Care Servs., Inc.*, 1994 WL 559103, at *11 (N.D. Ill. Oct. 6, 1994) ("[P]arty cannot interfere with own contract."), citing *Rao v. Rao*, 718 F.2d 219, 225 (7th Cir. 1983); *accord Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 884 (Del. Ch. 2009) (defendant must be "a stranger" to both the contract and the business relationship as a whole); *see also Sangston v. Ridge Country Club*, 35 F.3d 568 (7th Cir. 1994) (where corporate agents cause the entity to breach its contracts, they cannot be sued in tort unless plaintiffs demonstrate actual malice, which Plaintiffs do not even attempt to do here). As a related concept, Defendants also cannot be liable both for breaching the contract and tortuously interfering with the same, providing further grounds for dismissal here, since Menkin and Goureau's conduct is alleged to be both in breach of the LLC Agreement and interfering with it (*compare* FAC ¶¶ 131-142 (breach allegations), *with id.* ¶¶ 154-161 (interference allegations based on the same exact conduct)). *See George A. Fuller Co., a Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1334 (7th Cir. 1983); *Kuroda*, 971 A.2d at 884.

[63] *See Tenneco Auto., Inc. v. El Paso Corp.*, 2007 WL 92621, at *6 n.33 (Del. Ch. Jan. 8, 2007) ("[O]ne need not be a party to a contract to be deemed not to be a stranger to the contract…."); *cf. Zachman*, 2015 WL 7423783, at *4 (Illinois law is similar to that of Delaware).

[64] "To plead a cause of action for tortious interference with contract under Illinois law, a plaintiff must allege '(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's

sufficient facts to show that Defendants induced any contractual breach. Rather, their allegations supposedly only show that they "intentionally engaged in actions in ways they knew would cause violation" of the contracts at issue (FAC ¶ 151; *accord id.* ¶ 159), thus failing to state a claim.[65]

*Second*, Plaintiffs' fifth claim for tortious interference with Credit and Security Agreements also fails for two additional reasons. One, the alleged offending conduct was directed at one of the Plaintiffs rather than a third party (FAC ¶ 152). Yet "liability for tortious interference may only be premised on acts immediately directed ***at a third party*** which cause ***that party*** to breach its contract with the plaintiff." *George A. Fuller*, 719 F.2d at 1331-32. Two, Plaintiffs seem to have forgotten to plead the predicate breach. Rather, they state that ML Fashion "is in jeopardy of defaulting and breaching the agreements and its performance will be rendered impossible" (FAC ¶ 152); further, the pleaded facts merely show that the contracts became more difficult to repay due to the allegedly missing inventory (*id.* ¶¶ 87-88), which cannot plausibly be read as raising an inference of the required complete impossibility. This also dooms the claim.[66]

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety.

Dated: January 4, 2021      */s/ Elizabeth L. Janczak*
                            Freeborn & Peters LLP
                            Elizabeth L. Janczak (Ill. Bar No. 6302864)

---

wrongful conduct; and (5) damages.'" *Zachman*, 2015 WL 7423783, at *5.

[65]     *Zachman*, 2015 WL 7423783, at *5 (dismissing similar allegations: "The essential thing is the intent to cause the result."), citing, *inter alia*, *Restatement (Second) of Torts* § 766 (1979) ("One does not induce another to commit a breach of contract with a third person … when he merely enters into an agreement with the other with the knowledge that the other cannot perform both it and the contract with the third person."); *accord Webb v. Frawley*, 906 F.3d 569, 579 (7th Cir. 2018) (affirming dismissal of the tortious interference claim since "knowledge that one's conduct is substantially certain to result in one party breaking its contract with another does not constitute inducement").

[66]     *See George A. Fuller*, 719 F.2d at 1331 & n.2 (upholding dismissal of the tortious interference claim "because no resulting breach is alleged"); *Peco Pallet, Inc. v. Nw. Pallet Supply Co.*, 2016 WL 5405107, at *13 (N.D. Ill. Sept. 28, 2016) (dismissing tortious interference claim because "increased cost of performance does not necessarily … render performance impossible").

311 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6520
ejanczak@freeborn.com

**Gerard Fox Law P.C.**
Gerard P. Fox
Lauren M. Greene
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447
gfox@gerardfoxlaw.com
lgreene@gerardfoxlaw.com

*Attorneys for Defendants*