# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ML FASHION, LLC, and ML RETAIL, **)** <br> **)** <br> Plaintiffs, **)** <br> **)** <br> v. **)** <br> **)** <br> NOBELLE, STEPHANIE MENKIN, SARIT **)** <br> MAMAN NAGRANI, and NICOLAS **)** <br> GOUREAU, **)** <br> **)** <br> Defendants. **)** | Case No. 1:20-cv-05124 <br><br> Judge Steven C. Seeger |

## AFFIDAVIT OF DEFENDANT STEPHANIE MENKIN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE VERIFIED AMENDED COMPLAINT

I, Stephanie Menkin, do hereby declare and state as follows:

1. I submit this affidavit in support of my Motion to Dismiss the Verified Amended Complaint. This affidavit is based upon my personal knowledge, and if called upon to do so, I would and could testify competently thereto.

2. I am a Member of ML Fashion LLC ("ML Fashion"), with a 33.3% membership interest. ML Fashion is comprised of three members: Plaintiff ML Retail LLC ("ML Retail"), Defendant Nicolas Goureau ("Goureau"), and myself. I am also the co-founder of Defendant Nobelle GW LLC ("Nobelle").

3. I reside in the State of New York.

4. Currently, I reside in New York, NY. I consider this residence to be my home, and I intend to reside at this location indefinitely.

5. In my personal capacity, I do not now and have never:

a. resided in the State of Illinois;

b. earned any income subject to taxation by the State of Illinois;

c. filed any income tax return with the Illinois Department of Revenue;

d. been subject to income taxation by the State of Illinois;

e. paid any income taxes levied by the State of Illinois;

f. owned, rented, leased or occupied any real property situated in the State of Illinois;

g. possessed any tangible personal property situated in the State of Illinois;

h. sold or delivered any goods or things of value in the State of Illinois;

i. delivered any products, goods, or things of value to the State of Illinois for use or consumption in the ordinary course of trade;

j. acquired or maintained any office or any address listing in the State of Illinois;

k. authorized or contracted for the listing of my name in any telephone, business, or other informational directory knowingly addressed to or targeting any specific person, firm, or corporation situated in the State of Illinois;

l. employed any persons residing, working, or located in the State of Illinois;

m. published any advertisements in the State of Illinois that knowingly targeted any person or business in the State of Illinois;

n. hired or otherwise contracted with any persons residing in the State of Illinois as an agent for soliciting business in the State of Illinois;

o. appointed a registered agent for service of process in the State of Illinois;

p. applied to any Illinois agency, subdivision, municipality, or other Illinois authority for any licenses, permits, or registrations to transact or conduct business in the State of Illinois; or

q. received any license, permit, or registration from any Illinois agency, subdivision, municipality, or other Illinois authority to transact or conduct business in the State of Illinois

6. Prior to and up until March 2016, Marcus Lemonis, and/or his representatives on behalf of ML Retail, Goureau, and I discussed the formation of ML Fashion. From the outset, we envisioned ML Fashion as a New York-centric company. I did not enter or otherwise visit Illinois to have discussions related to the formation of ML Fashion. Rather, I was located and residing in New York, NY during the course of these discussions. The parties did not discuss or otherwise contemplate any future business or any other lasting consequences in connection with ML Fashion's operations to take place in Illinois.

7. Once discussions were completed, on or around March 29, 2016, I signed the Limited Liability Company Agreement of ML Fashion, LLC (the "LLC Agreement"). I did so while I was present in New York, NY. Thus, at no point during the discussions surrounding the LLC Agreement, nor the execution of the LLC Agreement, did I enter into or was I otherwise present in Illinois.

8. In March 2016, on or around the date that the LLC Agreement was signed, ML Fashion was formed as a limited liability company under the laws of the State of Delaware.

9. To my knowledge, at all times since ML Fashion was formed and until recently, when Mr. Lemonis ended my involvement with the company, its principal place of business has been, and continued to be, in New York.

10. At the outset, I had no particular interest in the Chicago, Illinois market specifically or in Illinois generally. In forming ML Fashion, I had no specific intent to open stores in and across Illinois; instead, we intended to open stores across the whole country.

11. The first ML Fashion store opened in Lake Forest, Illinois, because it was Marcus Lemonis's residence at the time. It is my understanding that Mr. Lemonis already had two other businesses in Lake Forest and wanted to open an ML Fashion store in Lake Forest to expand his presence in his hometown. The tenants on the lease for the Lake Forest Store were Gooberry Corp., Marcus Lemonis LLC, and Marcus Lemonis personally; I had no involvement in negotiating that lease and did not see a copy of it prior to signing.

12. Although I managed the Illinois stores in the course of my duties as President of ML Fashion (as I managed all other ML Fashion stores across the country), I had no involvement in selecting any of the locations. I had no specific interest in opening a Chicago, Illinois location. All of the other Illinois store locations existed because Marcus Lemonis wanted to open stores in those locations. I did not select any of the Illinois store locations, I did not scout potential store locations, and I did not negotiate any of the leases for any of the Illinois stores. I did not encourage the expansion of ML Fashion's retail presence in Illinois in any way. By contrast, as part of my work for ML Fashion, I did scout store locations in other parts of the country, including Naples and Boca Raton, FL; Boston, MA; Las Vegas, NV; Malibu, CA; and Park City, Utah, among others. In short, Illinois did not consume more of my time than any other state where ML Fashion had stores.

13. Although I did occasionally visit Illinois for purposes of my work with ML Fashion, I similarly visited New York, Connecticut, Texas, Colorado, California, Florida, Massachusetts, Maryland, Louisiana, and Minnesota for purposes of the same work, and Illinois was never the focus of my work for ML Fashion. I was responsible for managing the Illinois store locations but, equally so, I was responsible for managing all ML Fashion stores across the country and indeed, I traveled to each ML Fashion store across the country.

14. While ML Fashion had several stores in the State of Illinois, ML Fashion had seven (7) stores in the State of New York at the following locations: 956 Lexington Avenue, New York, NY 10021; 1456 Third Avenue, New York, NY 10028; 1275 Third Avenue, New York, NY 10021; 875 Washington Street, New York, NY 10014; 402 West 13th Street, New York, NY 10014; 348 Jericho Turnpike, Syosset, NY, 11791; 58 Jobs Lane, Southampton, NY 11968. ML Fashion's headquarters were located at 38 East 29th Street, New York, NY 10016, from the inception of the Company up until approximately October 31, 2019. Accordingly, I considered ML Fashion to be a New York-focused company.

15. My last visit to Illinois, which, as all the previous visits, was in my capacity as the President of ML Fashion, was in February 2020.

16. In my capacity as President of ML Fashion, I had regular Company-wide management calls but there were no specific calls to solely Illinois management. To the extent that I spoke to management for a specific store, it was typically because that store required my attention. Similarly, I received invoices from vendors for all stores across the nation. I sent the invoices to Mr. Lemonis on a weekly basis for his approval. These approvals were based on the vendor, not any particular state. Thus, there was no specific invoice approval policy for Illinois.

17. I did not visit Illinois, nor the ML Fashion store in Illinois, during the entire month of August 2020, nor did I instruct anyone to enter into, visit, or take any actions within any ML Fashion store in Illinois during that same period or cause the alleged seizure of inventory in any other way.

18. Rather, to gather some of the inventory as part of my transition out of ML Fashion that was approved by Lemonis, I sent Lemonis an inventory breakdown of what was in the ML Fashion warehouse located in Vermont, and Lemonis approved of having certain items shipped to the new store that I opened in New York in January 2020. The inventory was shipped to my new store, not my mother Neomi. That store has been since closed down due to the COVID-19 pandemic. Additionally, some of the other inventory that I received as part of my transition out of the Company came from the old inventory not being sold by Lemonis in any of his MARCUS stores, or from another Lemonis-owned company called Front Door Fashion, which operates out of Dallas, Texas. Each of those shipments were also part of my transition out of ML Fashion that Lemonis approved; indeed, each of the shipments have been authorized by him in writing.

19. Since my departure from ML Fashion in March 2020, I have not had any interactions with ML Fashion employees in Illinois (or elsewhere) regarding ML Fashion inventory, nor did I misrepresent any transfers of inventory to any ML Fashion employee as being authorized by Mr. Lemonis.

20. I have never transferred any cash or inventory from any ML Fashion account or store in Illinois (or elsewhere) without the express approval or express direction of Marcus Lemonis.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: December 29, 2020

_____
Stephanie Menkin