IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ML FASHION, LLC, and ML RETAIL, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:20-cv-05124 |
| | ) | |
| v. | ) | |
| | ) | Hon. Steven C. Seeger |
| NOBELLE GL, LLC, STEPHANIE MENKIN, SARIT MAMAN NARANI, and NICOLAS GOUREAU, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER AWARDING SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**

# TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................................... 3

II. ARGUMENT......................................................................................................................... 5

   A. Applicable Standards ...................................................................................................... 5

   B. Plaintiffs Filed and Persisted in Maintaining This Vexatious and Duplicative Litigation, Thus Warranting Sanctions...................................................................................................... 8

III. CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ariel Investments, LLC v. Ariel Capital Advisors LLC*,
  881 F.3d 520 (7th Cir. 2018) .................................................................................. 10

*Bible Truth Crusade v. City of Bloomington*,
  709 F. Supp. 849 (C.D. Ill. 1989) ............................................................................. 9

*Boyer v. BNSF Ry. Co.*,
  824 F.3d 694 (7th Cir. 2016) .................................................................................... 7

*Burda v. M. Ecker Co.*,
  2 F.3d 769 (7th Cir. 1993) ........................................................................................ 7

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
  2009 WL 1703015 (N.D. Ill. June 18, 2009) .......................................................... 14

*Chalfy v. Turoff*,
  804 F.2d 20 (2d Cir. 1986) ...................................................................................... 12

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .................................................................................................... 6

*Coin Controlled Washers v. Dunn Cty. Realty Grp.*,
  1986 WL 366 (N.D. Ill. Aug. 1, 1986) ................................................................ 7, 11

*Conrad v. Boiron, Inc.*,
  869 F.3d 536 (7th Cir. 2017) .................................................................................... 6

*Dal Pozzo v. Basic Mach. Co.*,
  463 F.3d 609 (7th Cir. 2006) .............................................................................. 7, 15

*Edwards v. Equifax Info. Servs., LLC*,
  2018 WL 1748132 (S.D. Ind. Mar. 13, 2018) .......................................................... 7

*Felland v. Clifton*,
  682 F.3d 665 (7th Cir. 2012) .................................................................................. 11

*Fred A. Smith Lumber Co. v. Edidin*,
  845 F.2d 750 (7th Cir. 1988) .............................................................................. 6, 13

*Grochocinski v. Mayer Brown Rowe & Maw,
  LLP*, 719 F.3d 785 (7th Cir. 2013) ........................................................................... 6

*Hicks v. Arthur*,
  891 F. Supp. 213 (E.D. Pa. 1995) ........................................................................... 12

*In re Keegan Mgmt. Co., Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996) .................................................................................... 15

*In re TCI Ltd.*,
  769 F.2d 441 (7th Cir. 1985) .............................................................................. 7, 11

*Interstate Material Corp. v. City of Chicago*,
   847 F.2d 1285 (7th Cir. 1988) ............................................................................................. 9

*John Crane Inc. v. Shein Law Ctr., Ltd.*,
   2017 WL 1105490 (N.D. Ill. Mar. 23, 2017) ..................................................................... 10

*Jolly Grp., Ltd. v. Medline Indus., Inc.*,
   435 F.3d 717 (7th Cir. 2006) ............................................................................................... 7

*Marlow v. Winston & Strawn*,
   1994 WL 262077 (N.D. Ill. June 10, 1994) ........................................................................ 8

*MB Fin., N.A. v. Stevens*,
   2011 WL 5514059 (N.D. Ill. July 5, 2011) ......................................................................... 6

*Monco v. Zoltek Corp.*,
   342 F.Supp.3d 829 (N.D. Ill. 2018) ................................................................................... 10

*Novoselsky v. Zvunca*,
   324 F.R.D. 197 (E.D. Wis. 2017) ........................................................................................ 7

*Parrott v. Corley*,
   266 F. App'x 412 (6th Cir. 2008) ................................................................................. 8, 14

*Quiroga v. Hasbro, Inc.*,
   934 F.2d 497 (3d Cir. 1991) .............................................................................................. 12

*R. Prasad Indus. v. Douglas*,
   673 F. App'x 676 (9th Cir. 2016) ................................................................................ 8, 15

*R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*,
   2014 WL 4722487 (D. Ariz. Sept. 23, 2014) ............................................................... 8, 14

*Riddle & Assocs., P.C. v. Kelly*,
   414 F.3d 832 (7th Cir. 2005) ............................................................................................... 6

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ............................................................................................................. 6

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ............................................................................................. 10

*Thatcher v. Hanover Ins. Group, Inc.*,
   659 F.3d 1212 (8th Cir. 2011) ............................................................................................. 8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................................... 10

**Statutes**

28 U.S.C. § 1927 ................................................................................................................ passim

Seven months, twelve claims (including five based on federal statutes), two motions to dismiss (including one fully briefed), a fully briefed abstention motion, a fully briefed motion for a temporary restraining order, followed by this Court's opinion denying it, and sixty-nine docket entries later, Plaintiffs are out of here.[1]  Having ventured into this Court with this completely duplicative and unnecessary action, while lacking any good-faith jurisdictional basis to do so, they are on to greener pastures—specifically, *two more duplicative actions*, one in Illinois state court and another in the United States District Court for the District of Connecticut, where Plaintiffs simply repackaged the claims asserted here hoping for a more receptive audience.  In fact, Plaintiffs are not even shy about their repackaging shenanigans, as they now openly admit in Connecticut that "Plaintiffs are re-filing their claims in this Court, where Defendants cannot in good faith claim that they are not subject to the Court's personal jurisdiction …." (Ex. 1 at ¶ 207.)

In other words, Plaintiffs wined and dined in this Court to their full heart content and have now stuck Defendants with the (very expensive) tab.  Fortunately, these vexatious litigation tactics are not without a remedy.  And unless this Court takes this opportunity to sanction Plaintiffs' and their counsel's egregious conduct, they will be emboldened to continue by further multiplying proceedings in courts across the country.  Indeed, there are now (at least) four more actions filed by Marcus Lemonis (or his entities) in retaliation to claims by former participants in his show that he harmed their business—the aforementioned *two more duplicative actions against Defendants here*, as well as another Illinois state court action and an action in Pennsylvania federal court, both against former contestants that now claim that Lemonis preys on business he claims to save.

---

[1] All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted.  All "Ex." references are to the documents attached to the Affidavit of Lauren M. Greene.

1

Accordingly, Defendants seek an award for attorneys' fees, sanctions, and any other relief that the Court may award pursuant to 28 U.S.C. § 1927 and/or its inherent authority based on Plaintiffs' and their counsel's pursuit of a vexatious and duplicative litigation in this Court. Plaintiffs' months-long foray into this Court, despite the first-filed and substantially similar litigations already pending in other courts, where they were free to assert the claims they insisted on bringing here, should not be taken lightly. Plaintiffs came here without any valid jurisdictional basis—their recent re-filing of the same claims in Connecticut conclusively proves as much. They then demanded emergency relief based on "[a] pallet of sweaters and t-shirts … when they [we]ren't going anywhere" (which was fully briefed and necessitated a full opinion from this Court, Dkt. No. 54) and subjected Defendants to more than half a year of intense litigation—only to discard it in the end and continue elsewhere. Importantly, Plaintiffs were on notice that they had no business being here since Defendants' first motion to dismiss brought in October 2020—yet, in response, Plaintiffs doubled down and filed an amended complaint, which added even more (baseless) claims. When this Court called on them to identify facts supporting their jurisdictional theory, they engaged in fruitless exercise of merely restating their allegations—prompting Defendants to warn them that this was **sanctionable** conduct in violation of the Court's orders. Despite all of that, Plaintiffs pressed on with this case anyway, necessitating a full round of briefing on another motion to dismiss, in addition to an abstention motion. It is only when they draw no immediate response from the Court for their demand of discovery sanctions that Plaintiffs decided it was not worth it for them and called it a day.

Actions must have consequences, especially when those actions involve wasting valuable resources of a federal court on the type of scorched earth, forum-shopping litigation tactics that Plaintiffs and their counsel exhibited here. Defendants respectfully submit that these egregious

and wasteful tactics warrant an award of attorneys' fees and such other relief that the Court may find just and appropriate under the circumstances. If the Court determines that the requested sanctions are appropriate, Defendants intend to submit a detailed filing substantiating all reasonable fees and costs incurred in defending against Plaintiffs' voluntarily dismissed claims before this Court, including the fees and costs incurred in preparing the instant Motion.[2]

**I.     BACKGROUND**

The facts of the instant litigation are sufficiently known to this Court to dispense with a lengthy background section. In sum, Plaintiffs ML Fashion, LLC ("ML Fashion") and ML Retail, LLC ("ML Retail" and, together with ML Fashion, "Plaintiffs") filed their original complaint against Defendants on August 31, 2020, despite openly acknowledging that the same issues were already being litigated as part of the first-filed actions in Delaware and New York courts (Dkt. No. 14 at 2)[3] and despite the fact that none of the Defendants has any cognizable jurisdictional nexus to Illinois. Aside from the fortuity of Illinois citizenship of Plaintiffs and their figurehead, Marcus Lemonis ("Lemonis"), there was no other link to Illinois, as was further confirmed by Defendants' sworn evidence submitted in support of their motion to dismiss, demonstrating that they have never purposefully availed themselves of the forum. Nonetheless, Plaintiffs' original complaint asserted nine claims for, *inter alia*, breach of contract, breach of fiduciary duty, conversion, aiding and abetting, fraud, and claims under the Lanham Act—the latter instantly question by the Court as facially suspect (Dkt. No. 12).

Defendants placed Plaintiffs on notice of all the deficiencies in their complaint by

---

[2]     For perspective, and to highlight the importance of this Motion, the current tab that Plaintiffs have run up by pursuing this case stands at over $300,000 in attorney's fees alone.

[3]     The Delaware and New York complaints are part of the Court's record as Dkt. Nos. 14-3 & 14-4, respectively. On March 30, 2021, the Delaware court stayed the Delaware action until resolution of the New York action. As Defendants explained in their motion to dismiss papers here, the New York action was filed separately from the Delaware action because it dealt with a separate investment by Lemonis into Gooberry Corp., Menkin and Goureau's family business (Dkt. No. 32 at 2 n.2).

3

moving to dismiss the initial complaint on October 26, 2020, on the basis of lack of jurisdiction, improper venue, and failure to sufficiently plead claims. (Dkt. Nos. 31-32.) Without opposing the pending motion to dismiss, Plaintiffs filed their Verified First Amended Complaint on November 16, 2020, adding three new claims under the Computer Fraud and Abuse Act and the Defense of Trade Secrets Act of 2016. (Dkt. No. 35.)

Defendants again moved to dismiss on January 4, 2021. (Dkt. Nos. 40-44.) Simultaneously, Defendants also moved to stay the instant action under the *Colorado River* abstention doctrine in favor of the earlier-filed Delaware lawsuit. (Dkt. Nos. 47-48.) On January 19, 2021, this Court denied Plaintiffs' request for a temporary restraining order, finding, *inter alia*, that it failed for lack of likelihood of success on the merits of the asserted claims. (Dkt. No. 54.) On the same day, the Court, *inter alia*, ordered Plaintiffs to communicate "the factual basis" for their claims asserted against Goureau and Nagrani. (Dkt. No. 56.) As Defendants later advised, Plaintiffs had failed to obey this Order, warranting dismissal based on that sanctionable conduct alone. (Dkt. No. 65 at 2-3 ("Defendants' position"), citing Dkt. No. 65-2.)

Nevertheless, Plaintiffs proceeded to oppose Defendants' pending motions to dismiss and to stay on February 3, 2021, grounding their oppositions on extensive evidentiary filings, none of which held any water. (Dkt. Nos. 60-61.) The briefing on the motions was complete on February 24, 2021, when Plaintiffs filed their replies. (Dkt. Nos. 68-69.) Meanwhile, Plaintiffs moved for leave to conduct third-party discovery and to compel the return of property and for sanctions against Defendants on February 17, 2021. (Dkt. Nos. 66 & 67.) Impatient, Plaintiffs emailed the Court on February 23, 2021, reminding the Court that these motions were pending. (Ex. 2.) On March 26, 2021, apparently unhappy with the pace of this litigation and likely anticipating a dispositive adverse ruling from this Court, Plaintiffs voluntarily dismissed all of

their claims. (Dkt. No. 70.) This Court ordered the case closed on March 27, 2021. (Dkt. No. 71.)

But Plaintiffs do not go away that easily. As they have just candidly conceded in a filing initiating yet another duplicative action against Defendants (Ex. 1 at ¶ 207), Plaintiffs further multiplied proceedings by repackaging their claims here into ***two additional duplicative*** actions: one that they had initiated back in November 2020 in the Circuit Court of Cook County, Illinois styled as *ML Fashion, LLC, et al. v. Goureau, et al.*, No. 2020L012546 (Ex. 4 to Dkt. No. 48)—where Defendants are now in the process of briefing three more motions to dismiss, and another that they have just filed in the federal court in Connecticut on April 9, 2021, styled as *ML Fashion, LLC, et al. v. Nobelle GW, LLC, et al.*, No. 3:21-cv-00499-JCH (D. Conn.) (Ex. 1). This follows the deliberate, multi-forum multiplication of litigation recently exhibited by Lemonis, who is now starting to sue every former contestant on the *Profit* that has dared to accuse him of dilatory conduct: to wit, Lemonis has already filed one such action in the Circuit Court of Lake County, Illinois and in a federal court in Pennsylvania. (*See* Exs. 3 & 4.) Apparently, more is to come, as accusations from former contestants against Lemonis have recently started to pile up; indeed, there are reportedly at least twenty such former contestants at this point (*see* Ex. 5).

## II. ARGUMENT

### A. Applicable Standards

As the Seventh Circuit observed,

> Federal courts have an array of tools to address [abusive litigation]. And free-standing claims are not the only option. Prominent among them is 28 U.S.C. § 1927, which authorizes the court to sanction against "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously ...." … Finally, the courts have inherent power to punish abuses of process.

*Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017).[4]

Section 1927's purpose "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005); *see also Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) ("This provision permits a court to insist that the attorney bear the cost of his own lack of care."); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (imposing attorney's fees as a sanction "serv[es] the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy"). District courts also have the inherent power to sanction litigants and their attorneys for "bad-faith conduct …." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013), quoting *Chambers*, 501 U.S. at 47. "If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

"[W]hen an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is without plausible legal or factual basis and lacking in justification; or pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," sanctions are warranted. *MB Fin., N.A. v. Stevens*, 2011 WL 5514059, at *2 (N.D. Ill. July 5, 2011), *aff'd*, 678

---

[4] Pursuant to this authority, this Court is authorized to award sanctions on a post-judgment motion. *See, e.g., Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 2018 WL 8898621, at *1 n.2 (N.D. Ill. Aug. 14, 2018) (finding motion for sanctions filed seventy days after judgment to be timely); *Sanders v. Connan's Paint & Body Shop, LLC*, 2015 WL 5692542, at *3 n.3 (S.D. Ind. Sept. 28, 2015) ("Defendants have not sought sanctions against Plaintiff's counsel for violating § 1927, but they may choose to in a post judgment motion."); *see also Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 843 (N.D. Ill. 2015), citing *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992); *accord Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997).

F.3d 497 (7th Cir. 2012), citing *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). This includes "the filing of a complaint [which] can constitute an unreasonable and vexatious multiplication of the proceedings and therefore be sanctionable under § 1927." *Edwards v. Equifax Info. Servs., LLC*, 2018 WL 1748132, at *3 (S.D. Ind. Mar. 13, 2018), citing, *inter alia*, *In re TCI Ltd.*, 769 F.2d 441, 447 (7th Cir. 1985). For purposes of sanctions, unlike other jurisdictions, the Seventh Circuit only requires a showing of "objective bad faith [which] does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Id.*; *see also Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993) ("In assessing whether an attorney's actions were objectively unreasonable a court may infer intent from a total lack of factual or legal basis for a suit.").

Courts have found that filing a case in a forum with no valid jurisdictional nexus is sanctionable. *See, e.g., Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 713 (7th Cir. 2016) (holding that "the decision of plaintiffs' counsel to file this litigation in Arkansas state court was objectively unreasonable and vexatiously multiplied the proceedings, warranting sanctions pursuant to section 1927"), *opinion modified on reh'g*, 832 F.3d 699 (7th Cir. 2016); *Novoselsky v. Zvunca*, 324 F.R.D. 197, 207 (E.D. Wis. 2017) ("Litigants of all kinds—and perhaps especially lawyer-litigants—should be expected to conduct reasonably careful research in finding that jurisdictional premises for suit are satisfied. [Counsel] did not do so, and that failure is worthy of sanctions."); *Coin Controlled Washers v. Dunn Cty. Realty Grp.*, 1986 WL 366, at *2 (N.D. Ill. Aug. 1, 1986) (granting sanctions where counsel "failed to check the jurisdictional requirements of this court before filing suit and then ignored a warning from his adversary which, if heeded, would have

7

eliminated the need for any of the briefs and affidavits in this case. As the Seventh Circuit has made clear …, we can no longer tolerate this kind of conduct by attorneys who practice in our courts."). This is especially so when viewed in combination with Plaintiffs' voluntary dismissal, since courts have also held "voluntary withdrawal of the claim to be evidence of the claim's legal or factual weakness," where, as here, it was withdrawn in the face of a pending motion to dismiss. *R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, 2014 WL 4722487, at *6 (D. Ariz. Sept. 23, 2014), *aff'd sub nom. R. Prasad Indus. v. Douglas*, 673 F. App'x 676 (9th Cir. 2016); *see also Parrott v. Corley*, 266 F. App'x 412, 414 (6th Cir. 2008) ("The district court was within its discretion to find that Plaintiff's voluntary dismissal on the eve of the hearing served as evidence that Plaintiff's counsel knew or should have known that [his position] ... was frivolous."). In fact, courts have consistently held that it is sanctionable "bad faith" conduct for a plaintiff to use voluntary dismissal as an avenue for seeking a more favorable forum. *Marlow v. Winston & Strawn*, 1994 WL 262077, at *1 (N.D. Ill. June 10, 1994) (awarding sanctions where "plaintiffs' motion for voluntary dismissal represents nothing more than a ***conscious, calculated, and impermissible decision to shop for a more favorable forum***.... [P]laintiffs demonstrated bad faith by filing a duplicative lawsuit in state court and then moving for a voluntary dismissal in this court."); *see also Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 1214 (8th Cir. 2011) ("We have repeatedly stated that it is inappropriate for a plaintiff to use voluntary dismissal as an avenue for seeking a more favorable forum.").

**B.    Plaintiffs Filed and Persisted in Maintaining This Vexatious and Duplicative Litigation, Thus Warranting Sanctions**

The very fact that these same Plaintiffs are now pursuing the very same claims against the very same Defendants in Connecticut is, in itself, a strong showing that they had no business filing these claims in Illinois in the first place. Plaintiffs' *mea culpa* jumps off the page of their

8

recent Connecticut complaint to read loud and clear: Plaintiffs finally dismissed this action having read the writing on the wall and in fear of this Court's imminent dismissal for lack of personal jurisdiction. (*See* Ex. 1 at ¶ 207 ("Plaintiffs are re-filing their claims in this Court, where Defendants cannot in good faith claim that they are not subject to the Court's personal jurisdiction ….").) It took Plaintiffs seven months to realize that this action does not belong in Illinois—something that they and their counsel should have known from day one. In fact, they have been repeatedly placed on notice that this case lacks any cognizable jurisdictional basis—yet they persisted anyway. This is despite the fact that they already had two prior related litigations where they could freely assert their claims. This Court's sanction powers were tailor-made for just such an abuse of litigation process. *Cf. Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (concluding that "the federal suit could be considered both vexatious and contrived" where plaintiff "filed both suits within seven months of each other seeking substantially the same relief from substantially the same parties. Without presuming [plaintiff]'s motives, we see no reason why all claims and all parties could not have been, and still could not be, part of one suit."); *Bible Truth Crusade v. City of Bloomington*, 709 F. Supp. 849, 852 (C.D. Ill. 1989) (federal action was both "vexatious and contrived" when all claims and parties could have been part of one suit).

When they came to this Court, Plaintiffs declared that their claims belonged here despite the already existing first-filed Delaware and New York litigations because, according to them, only this Court can remedy the harm Plaintiffs purportedly suffered in Illinois. (Dkt. No. 14 at 2.) Plaintiffs' subsequently filed duplicative actions in Illinois state court and now in the Connecticut federal court betray this representation to have been a false statement. In any event, this already foreshadowed what is now a certainty: Plaintiffs were proceeding on an outdated

9

jurisdictional theory believing that their purported suffering of harm in Illinois is enough to establish jurisdiction. Defendants set them straight on October 26, 2020 by filing their initial motion to dismiss, which, *inter alia*, cited to the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277, 285 (2014), which mandated that "the plaintiff cannot be the only link between the defendant and the forum." (Dkt. No. 32 at 6.) And, to the extent Plaintiffs sought to rely on some speculative anticipation of Plaintiffs' Illinois-based harm, Defendants cited binding recent Seventh Circuit authority expressly foreclosing Plaintiffs' jurisdictional theory:

> Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law…. The district court thought that Ariel Capital had set out to injure Ariel Investments, knowing that it is located in Illinois. That's exactly the sort of allegation the Justices deemed inadequate in *Walden*, because "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. The [Supreme] Court added: "These same principles apply when intentional torts are involved."

(Dkt. No. 32 at 11, citing *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (also observing that "Ariel Investments tells us that a defendant should be subject to personal jurisdiction in any state at which it 'aimed its actions.' That contention is incompatible with Walden; it is exactly what the court of appeals in *Walden* had held, and not a single Justice accepted the position.") (original emphasis); *see also* Dkt. No. 68 at 2-3, citing *Monco v. Zoltek Corp.*, 342 F.Supp.3d 829, 835-36 (N.D. Ill. 2018) (calling into "significant doubt" any decision that relies on Plaintiffs' jurisdictional theory after *Walden* and specifically noting that the reasoning in Plaintiffs' lead authority here, *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010), cannot be followed: "even conduct aimed at injuring plaintiff's forum state business is insufficient where that conduct does not connect the defendant to the forum state itself"), and *John Crane Inc. v. Shein Law Ctr., Ltd.*, 2017 WL 1105490, at *8 (N.D. Ill. Mar. 23, 2017) (rejecting plaintiff's jurisdictional theory where "[m]ost of the caselaw on which [plaintiff]

10

relies predates *Walden* …, and its response brief takes on neither" and specifically distinguishing another Plaintiffs' authority, *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012), as standing for "the proposition that a defendant's communications with a forum state plaintiff, standing alone, provide jurisdictionally sufficient minimum contacts with the forum, [which] stands in considerable tension with *Walden*"), *aff'd*, 891 F.3d 692 (7th Cir. 2018).) Any reasonable counsel would thus know of these teachings before asserting claims against out-of-state defendants that were alleged to have acted in Illinois to open some stores—that is, actions that had nothing to do with the claims asserted. In fact, for Defendants Nobelle and Narani, no actions in Illinois were even alleged.

As Judge Easterbrook explained,

> Lawyers sometimes file first and think later. This may impose on the other party the costs of deciphering the pleading, running down the cases, informing the court, and putting things right. One of the premises of the legal system, however, is that each party should bear its own expenses and not fob them off on the other side.

*TCI*, 769 F.2d at 442 (affirming sanctions). In a case with similar facts, this reasoning resulted in sanctions where, as here, the plaintiff filed claims in this District against two defendants, each lacking valid jurisdictional ties to the District. Imposing sanctions for a bad faith filing, the court then explained why, under *TCI*, plaintiff's improperly-filed complaint necessitated the plaintiff's reimbursement of the defendants' fees:

> We conclude that plaintiff's action was brought in the Northern District of Illinois by an attorney who failed … to check the jurisdictional requirements of this court before filing suit and then ignored a warning from his adversary which, if heeded, would have eliminated the need for any of the briefs and affidavits in this case. As the Seventh Circuit has made clear, we can no longer tolerate this kind of conduct by attorneys who practice in our courts.

*Coin Controlled*, 1986 WL 366, at *2. This reasoning applies with full force here.

Moreover, Plaintiffs' and their counsel's complete disregard for applicable law was not limited to personal jurisdiction. On their face, the asserted claims were wobbly at best, as this

11

Court itself pointed out in its denial of a temporary restraining order:

> The amended complaint includes a fraud claim, but it is non-descript, and does not appear to satisfy the particularity requirements of Rule 9. The amended complaint also includes a fiduciary duty claim. But ML Fashion, LLC is a Delaware limited liability company, and fiduciary duties do not exist by default for non-managing members. Plaintiffs do not make the case that Defendants are managing members—if anything, the amended complaint alleges the opposite— and they point to no language in the LLC Agreement creating fiduciary duties. Also, the viability of the claims under the Lanham Act remains to be seen, and the same is true of the tortious interference claims. It is not obvious that the alleged use of ML Fashion's property by Nobelle could give rise to a claim that Defendants are tortiously interfering with agreements between the two Plaintiffs. Those illustrative issues are on top of serious questions about personal jurisdiction and venue.

(Dkt. No. 54 at 17-18.) And Defendants' first motion to dismiss provided ample support for Plaintiffs to conclude that they not only lacked jurisdiction, they simply had no claims. Yet three weeks after the first motion to dismiss, Plaintiffs doubled down and filed their amended complaint, not only reasserting their specious jurisdictional grounds and infirm claims but also adding *more* meritless claims. (Dkt. No. 35.) In fact, this continuous and deliberate overpleading of Plaintiffs' claims is a sanctionable conduct on its own. *See, e.g., Hicks v. Arthur*, 891 F. Supp. 213, 215 (E.D. Pa. 1995), *aff'd*, 91 F.3d 123 (3d Cir. 1996). As the *Hicks* court concluded in similar circumstances, "[w]e find that this massive over-pleading was done vexatiously and to multiply the proceedings." *Id.*, citing, *inter alia*, *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir. 1986) (concluding that the overpleading at issue demonstrated that plaintiff "did not attempt seriously to weigh the merits of their various claims"), and *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991) (affirming sanctions where "attorney tried to force plaintiff's various grievances into the framework of various state and federal causes of action" without reasonable basis for doing so).

This, of course, did not go unnoticed by this Court. On January 19, 2021, this Court issued a series of orders demanding more information from the Plaintiffs. (*See* Dkt. Nos. 55-56.)

Among those orders was the Court's mandate for Plaintiffs to communicate "the factual basis" for including Defendants Goureau and Nagrani in this lawsuit. (Dkt. No. 56.) In response, Plaintiffs did nothing else but restate the already-familiar allegations from their complaint. (*See* Dkt. No. 65 at 2-3 ("Defendants' position"); *see also* Dkt. Nos. 65-1 & 65-2.) This was such an obvious mockery of the process that Defendants classified Plaintiffs' complete disregard of the Court's orders as "sanctionable." (*See* Dkt. No. 65-2 at 2.) Undaunted, Plaintiffs still refused to dismiss any claims and persisted in their conduct by opposing Defendants' renewed motion to dismiss (Dkt. Nos. 40-44), along with Defendants' motion to stay based on abstention (Dkt. Nos. 46-48).

Plaintiffs' opposition papers confirmed what by now has become quite obvious: Plaintiffs' case had no jurisdictional legs to stand on, since all Plaintiffs could offer in opposition was entirely outdated caselaw. Defendants will not belabor the lack of even minimal merit that Plaintiffs' opposition papers conclusively demonstrate—indeed, they already extensively did so in their reply papers (Dkt No. 68 at 1-6). It is notable, however, that Plaintiffs' opposition papers did not even so much as *acknowledge* binding precedent in *Walden* or *Ariel Investments*, let alone actually address it. In other words, Plaintiffs and their counsel employed the very tactic that the Seventh Circuit has already determined to be sanctionable—namely, the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Fred A. Smith*, 845 F.2d at 753 (awarding fees and costs under, *inter alia*, Section 1927).

Similarly, Plaintiffs' opposition papers did little to save the claims on the merits. Notably, none of the multitude of the federal statutes asserted against Defendants could even remotely fit, and Plaintiffs went as far as resorting to misleading citations of authority in their monumental effort to squeeze the allegations into the relevant statutory framework. (*See* Dkt.

No. 68 at 9-15, citing, *inter alia*, Plaintiffs' deliberately inaccurate quotation from *Cassetica Software, Inc. v. Computer Scis. Corp.*, 2009 WL 1703015, at *4 (N.D. Ill. June 18, 2009).) Inexplicably, Plaintiffs also engaged into a massive evidentiary dump to save their claims—all the while ignoring that motions to dismiss do not customarily admit such evidence. (*See* Dkt. No. 68 at 8-9.) All in all, it is beyond any reasonable explanation why Plaintiffs insisted on multiplying this proceeding when the writing on the wall was there to begin with.

It was only when Plaintiffs tried to get the Court's attention for their nonsensical motion for discovery sanctions (Ex. 2) and did not get it fast enough that they lost patience and finally called it a day. But their voluntary dismissal in the face of this Court's imminent ruling on Defendants' motion to dismiss supplies further evidence that they themselves did not believe their claims would survive; indeed, their recent candid confession in the new Connecticut complaint proves as much, since there Plaintiffs openly concede that they ran away because their jurisdictional house of cards was about to fall apart. (*See* Ex. 1 at ¶ 207.) Other courts agree that a voluntary dismissal in the face of an imminent adverse decision qualifies as evidence of sanctionable conduct. *See, e.g.*, *R. Prasad*, 2014 WL 4722487, at *6; *accord Parrott*, 266 F. App'x at 414. The reasoning of the *Prasad* court is instructive:

> Although the Court did not rule on the merits of [defendant]'s 12(b)(6) motion to dismiss, examination of the record and Defendants' pleadings reveals that the … claims … were both baseless and made without a reasonable and competent inquiry. Initially, the Court notes that despite being on notice of [defendant]'s arguments concerning the factual and legal deficiencies of the original … claim against [defendant], [claimant] repleaded a materially identical claim in the [amended complaint]. Then, after [defendant] reraised the same arguments in [his] subsequent motion to dismiss, [claimant] voluntarily withdrew [one of] the [challenged] claims. [Claimant] has not explained how a reasonable and competent inquiry between [defendant]'s original motion to dismiss and the [amended complaint] failed to reveal the lack of merit that his post-[amended complaint] inquiry apparently revealed. Thus, the Court finds [claimant]'s voluntary withdrawal of the claim to be evidence of the claim's legal or factual weakness.

*Id.* (awarding sanctions); *see also R. Prasad Indus. v. Douglas*, 673 F. App'x 676, 677 (9th Cir. 2016) (affirming the *Prasad* court's award of sanctions because "[t]he filings unreasonably multiplied proceedings …. The district court's finding that [claimant] acted recklessly is fully supported by the record.").[5] As such, Plaintiffs' voluntary dismissal in the face of the imminent ruling by this Court, coupled with Plaintiffs' further multiplying proceedings by not only maintaining this action despite first-filed litigations in Delaware in New York and having no cognizable jurisdictional theory to initiate it but also by further splitting it into another two duplicative actions currently pending in Cook County and in Connecticut, is ample evidence that Plaintiffs' and their counsel's unreasonably vexatious course of conduct is due to be sanctioned.

## III. CONCLUSION

After seven months of outright war waged on Defendants in this Court for no apparent reason but to stick it to them for daring to sue the mighty Lemonis elsewhere, the wreckage Plaintiffs leave behind is no small matter. Defendants are David to Lemonis' Goliath; unlike him, they do not have unlimited resources to litigate in every jurisdiction under the sun. Plaintiffs' continuous purposeful and vexatious multiplying of proceedings to outspend Defendants into submission, all the while asserting bogus jurisdictional allegations and made-up claims, is a deliberate litigation tactic that has been decried by the Legislature and other courts as sanctionable at its core. This Court should not stand idly by and allow this conduct while its time and resources are being so blatantly misused for a sinister game of forum-musical-chairs. Accordingly, it should grant this Motion in its entirety.

---

[5] Notably, the Ninth Circuit applies a more stringent standard for sanctions because it, unlike the Seventh Circuit, requires a showing of *subjective* bad faith. *Compare Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) ("Subjective bad faith, the more difficult type of bad faith to prove, is not always necessary."), *with In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (requiring a showing of "subjective bad faith" for sanctions). This makes the *Prasad* decisions even more persuasive.

15

| Dated: April 12, 2021 | /s/ Elizabeth L. Janczak |

Freeborn & Peters LLP
Elizabeth L. Janczak (Ill. Bar No. 6302864)
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6520
ejanczak@freeborn.com

**Gerard Fox Law P.C.**
Gerard P. Fox
Lauren M. Greene
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Telephone: (310) 441-0500
Facsimile: (310) 441-4447
gfox@gerardfoxlaw.com
lgreene@gerardfoxlaw.com

*Attorneys for Defendants*